BRADLEY · v. THE STATE *ex rel.* the solicitor-general.

LOONEY *v.* THE STATE *ex rel.* the solicitor-general.

1. The power to punish contempts is inherent in every court of record. If the court is created by the constitution, the legislature can not, without express constitutional authority, define what are contempts and declare that the court shall have jurisdiction over no acts except those specified.
2. The provision of the constitution which declares that "The power of the courts to punish for contempts shall be limited by legislative acts" does not confer such authority, but only the power to prescribe the punishment, after conviction. Consequently section 4046 of the Civil Code, in so far as it seeks to limit the jurisdiction of a constitutional court to punish contempts to certain specified acts, is not binding upon such courts. They may go beyond the provisions of the statute, in order to preserve and enforce their constitutional powers by treating as contempts acts which clearly invade them.
3. That a given act may be indictable does not deprive a court of the power of dealing with it as a contempt of court.

Argued June 18, — Decided July 10, 1900.

Information for contempt.   Before Judge Lumpkin.   Fulton
superior court.   March term, 1900.

The information in each case charged that the defendant,
"in said county, on or about April the 3d, 1900, did commit
the offense of contempt of court by the following conduct and
act, to wit: in the case of Thomas H. Malone, propounder, *vs.*
Mattie Adams, caveatrix, then and there pending and on trial
in said court, when, pending said trial, it became necessary to
adjourn the further progress of the cause until Monday, April
the 9th, 1900, at which time the said case was to be resumed in
said court before said jury, the court duly instructing said jury
as to their conduct during the time of their dispersal and until
they were to resume the hearing of said case in the court as
above mentioned, the jury being still in charge of said case, the
said [defendant] did improperly and corruptly approach [a per-
son named], one of the attorneys engaged in the trial of said case,
and did state to said attorney, in substance and effect, that a
member of said jury could be approached and illegally influ-
enced in obtaining a verdict, or a mistrial; and did in substance
offer, directly or by intimation, that he would approach said
juror, or have it done, and corruptly influence and control said
juror in order to obtain said verdict or mistrial."   By amend-
ment it was alleged that the defendant approached the attorney
named, in the manner set out in said information, in the County
of Fulton and City of Atlanta, Georgia.

*King & Anderson, Lewis W. Thomas, Rosser & Carter,* and
*J. H. Porter,* for plaintiffs in error.
*C. D. Hill, solicitor-general,* contra.

SIMMONS, C. J.   Information under oath was filed before the
judge of the superior court of the Atlanta circuit, charging
Bradley and Looney with contempt of court.   The specifica-
tions of the charges will be found in the official report.   Neither
Bradley nor Looney was an officer or juror of the court or con-
nected with the case on trial.   Both filed demurrers on the
grounds, that the facts set out did not show that they were
guilty of any contempt of court; that the allegations did not
show that the contempt, if any was committed, was in the pres-

ence of the court or so near thereto as to obstruct the administration of justice; and that, if the facts alleged were true, they were liable to be indicted for the violation of a criminal statute.    These were, in substance, the grounds of demurrer argued before this court.    The court overruled the demurrers; trials were had, Bradley and Looney were adjudged in contempt, and both fines and imprisonment were imposed.    To this judgment and sentence, and to the overruling of their demurrers, Bradley and Looney excepted.    A separate information was filed against each, and they were tried separately, but the cases were argued together here, and we will treat them together, as they present the same questions.

The power to punish for contempts is inherent in every court of justice.    It is absolutely necessary that a court should possess this power in order that it may carry on the administration of justice and preserve order and decorum in the court.    As far as we can ascertain, this power has existed since courts were first established.    Judge Wilmot, in 1795, in a treatise upon the subject, said he had been unable to find where it was first exercised, but in his opinion it was as old as the courts themselves. All the courts, in their decisions, and all the text-writers lay down the same doctrine, — that this power is necessary to all courts and is inherent in them.    It is so well established that we deem it unnecessary to cite authorities upon the subject. This power being inherent and necessary, can the legislature by defining what are contempts limit the courts to treating as contempts such acts only as are embraced in the legislative definition?    In the formation of our government, Federal and State, the three departments of government were in each constitution ordained to be separate, distinct and independent of each other. No one of them had any right or power to infringe upon the power or jurisdiction of the other, without an express constitutional provision granting this right or power.    The legislature can not take away, restrict, or modify any of the powers conferred by the constitution upon the executive.    Nor can the executive infringe upon the powers of the legislature.    Nor can either the legislative or executive abridge the powers conferred by the constitution upon the courts, unless express authority is given.    Each of these departments represents the sovereignty

of the people. Indeed, the executive, the legislature and the judiciary are but the servants and agents of the people. To each department the people have given certain powers, and have declared that neither of the other departments shall interfere therewith. The people have intrusted these servants or agents with the duty of carrying out their will, and for that purpose, in one of these departments, they have by their organic law established certain courts. Among these are the superior courts. When these courts were established by the constitution, they were established with all the rights and powers possessed by all courts of record prior to that time. Among these powers was that of defining and punishing contempts of court, whether such contempts were direct, that is, committed in the presence of the court, or constructive, interfering indirectly with the administration of justice. This power was incident to the court itself and belonged, not to the judges as individuals, but to the court. The courts established by the constitution were established by the people and represented the majesty of the people. Whoever disobeyed an order of such a court, or was in contempt of its proceedings, or did anything which tended to impede or corrupt the administration of justice committed a contempt against the majesty of the people. Without power and ability to preserve order and decorum, to preserve the purity of jury trial and to enforce their own orders, and the like, courts could not carry out the wishes of the people. The courts established by the constitution were therefore vested with all these necessary powers,— powers which were at common law possessed by all courts of record. Whatever a court of record could, under the common law, punish as a contempt, these courts had power to deal with as a contempt. This power came to them as much as did the common law. Indeed it is a part of the common law. 1 Bailey on Jur. § 297. When the constitutional convention established our courts, it vested in them all the power necessary to carry out the purposes for which they were designed. Such a court, established with such powers, is not in the exercise of these powers subject to legislative control. The superior court is a constitutional court, established with these powers, and the legislature has no right, without express constitutional authority, to abridge, restrict, or modify either its jurisdiction

or its powers. 1 Bailey, Jur. § 397 ; State *v.* Morrill, 16 Ark. 384 ; Carter *v.* Com. (Va.), 32 S. E. Rep. 780, 45 L. R. A. 310 ; Ex parte Robinson, 19 Wall. 505 ; 7 Am. & Eng. Enc. L. (2d ed.) 33, and cases cited.

These points were conceded by the able and learned counsel who argued these cases here; but they claimed that the constitution of this State had granted to the legislature the express power to define what are contempts, to classify them, and to take away from the courts jurisdiction to punish as contempts any act not mentioned in the statute which is now codified as section 4046 of the Civil Code. Paragraph 20 of section 1 of article 1 of the constitution of our State (Civil Code, § 5717), in the bill of rights, says : "The power of the courts to punish for contempts shall be limited by legislative acts." We think that neither a literal nor a liberal construction of this paragraph can make it mean what counsel for the plaintiffs in error insisted it did mean. The word "power," used in this connection and as applied to courts, means "the right, ability, or faculty of doing something" (Bouvier's Law Dict., 2d ed., title "power"); it is "the ability to act, regarded as latent or inherent; the faculty of doing or performing something; capacity for action or performance" (Webster). The word "punish" is defined by Webster to mean "to impose a penalty upon; to afflict with pain, loss, or suffering for a crime or fault; . . to inflict a penalty for [an offense] upon the offender;" and by Anderson, " to impose a penalty for the commission of a crime." Giving to these two words their ordinary and usual meaning, the paragraph would read as follows : The right or authority of the courts to impose penalties or inflict punishment for contempts shall be restricted by legislative acts. If the framers of the constitution had desired that the legislature should classify and define contempts of court, they would certainly have put in this paragraph, or in some other, words expressly giving the legislature power to do so. Had they said that the legislature should have power to define what are contempts, there could be no possible doubt upon the subject. Many illustrations could be given of where constitutions give to the legislature power to define offenses and to fix the punishment for the same, but we think that nothing of the sort in regard to contempts

is contained in our constitution. Where a court is established by the constitution, it is given all the powers usually possessed by all courts, and we will not construe another provision of the constitution so as to take away from the court a power which is essential to its preservation and to its accomplishment of the purposes for which it is created, unless constrained to do so by express words or necessary implication.

The power to limit the punishment of contempts was first given the legislature by the constitution of 1861. The chairman of the committee on the revision of the constitution in that convention was T. R. R. Cobb, who, in my opinion, was the greatest lawyer this State has ever produced, and who had, I think, no superior in any other State. His codification of the common law, of equitable principles, of the statutes of this State, and of the decisions of this court, will stand as a monument to his great learning, research, and ability as long as our system of laws prevails. Being chairman of the committee which reported the constitution of 1861, he doubtless drafted the paragraph now under consideration. He was not only a great lawyer but a scholar as well, and must certainly have known the meaning of the words used and what would be their effect, and must have used them with reference to their ordinary meaning as defined by lexicographers. Taking these words in this sense, it is clear to us that the only power given to the legislature was the power to fix the limit of the punishment which the courts could inflict for contempts. Before that time, courts were not restricted in punishing contempts to any certain sum or to any certain period of imprisonment. Knowing the fallibility of human nature and perhaps believing from his experience and practice in the courts that a judge sometimes took a contempt as personal rather than as a contempt of his authority or office and punished it too severely, and knowing also that the legislature would have no power, without a constitutional provision, to control the judge in this matter, Mr. Cobb doubtless inserted this provision in order to give the legislature power to restrict and limit the amount or quantum of punishment which could be inflicted. We are strengthened in this view by certain provisions inserted by Mr. Cobb in his codification of the laws of the State. From a diligent search

of the statutes in force prior to 1861 we can find no act of the legislature which attempted to restrict the amount of punishment to be imposed for contempts of court, the only hint at it being in the judiciary act of 1799, which prescribed the practice in summoning jurors and declared they should be fined three hundred dollars for non-appearance. When Mr. Cobb came to codify the laws of the State, he knew that there was no act limiting the punishment for contempt, and we first find a limitation upon the amount of such punishment in the Code of 1863. In that code were sections limiting the amount of punishment for contempts in the Supreme and superior courts and courts of ordinary. These sections were doubtless inserted by him to carry out the provisions of the paragraph of the bill of rights, quoted above. They limit the punishment for contempt by prescribing the maximum of fine or imprisonment which could be imposed. They apparently show Mr. Cobb's construction of the constitutional provision, and they have been adopted and incorporated in all succeeding codes of this State.

If these views are correct, it follows as a necessary consequence that constitutional courts are not, in dealing with contempts, restricted exclusively to the acts specified in section 4046 of the Civil Code, and that the legislature had no power, so far as these courts were concerned, to take away the inherent power to punish for contempt. Such a court may still "go beyond the provisions of the statute in order to preserve and enforce its constitutional powers by treating as contempts acts which clearly invade them." Rapalje, Contempts, § 11. Tampering with a juror or officer of court, corrupting or attempting to corrupt him, bribing or attempting to bribe him, are held by all courts to be contempts. Nor does it make any difference that the same act is indictable under the penal laws of the State. On this subject Judge Seymour D. Thompson, in an admirable article in 5 Crim. Law Mag., says (p. 155): "The power of the courts in this regard being founded in the principle of self-preservation, it does not at all go to deprive them of it that the law has provided some other mode for punishing the offender; it is quite immaterial that the offense is indictable. Courts are not obliged to trust the preservation of their dignity and authority to such weak agencies as information, indictment and

trial by jury, it may be before some other tribunal where the success of the prosecution and the conviction of the offender may depend upon the zeal of a prosecuting witness, or the State's attorney, or upon circumstances purely accidental.  Besides, the exigencies may not admit of so tardy a remedy." See the authorities cited in the footnote, and see also 2 Bishop, New Crim. Law, § 264.  On the general subject of contempts and the power of the legislature to regulate their punishment, see an admirable treatise by Judge Bailey in his work on Jurisdiction, vol. 1, § 287 et seq.

In the argument of this case, counsel cited many decisions of the United States courts, construing the act of Congress of March, 1831, of which section 4046 of our Civil Code is substantially a copy.  These decisions simply hold that the circuit and district courts, being the mere creatures of Congress, are bound by the act of Congress defining what contempts shall be punishable.  Judge Field, in ex parte Robinson, supra, puts his decision on that ground, and virtually holds that the Supreme Court of the United States, being a constitutional court, would not be bound by the act.  So while in this State courts created by the legislature are bound by section 4046 of the Civil Code, our superior courts, being created by the constitution and having the inherent power to decide what are contempts and to punish for contempts, can not be controlled in this respect by the legislature.  The latter has no more power to abridge, restrict, or modify the jurisdiction of the superior courts over contempts than it has to abridge their jurisdiction over matters conferred upon them exclusively by the constitution, such as the trial of title to land and the like.  The constitutional provision giving the legislature power to limit the power to punish for contempts does not authorize it to define or classify contempts, but only to fix the maximum amount of punishment to be imposed after the contempt has been adjudicated.

*Judgment in each case affirmed.  All the Justices concurring.*