## PERRYMAN *v.* THE STATE.

1. In criminal cases it is the proper practice for the court to allow counsel for the accused a reasonable time for consultation when requested; but a refusal to do so will not, in a case where the verdict was demanded by the evidence, and where it does not distinctly appear how the accused was injured thereby, work a reversal of the judgment.
2. The fact that one has been told that another has spoken slanderous words concerning a member of his family will not justify the former in taking the life of the latter, or reduce the killing below the grade of murder.
3. No error of law appears to have been committed by the trial court. The verdict was demanded by the evidence, and the court below did not err in refusing to grant a new trial.

Argued January 22, — Decided February 4, 1902.

Indictment for murder.    Before Judge Reagan.    Stewart superior court.    December 17, 1901.

*E. T. Hickey, J. T. Harrison, Harrell & Harrell, H. C. Cameron,* and *DuPont Guerry,* for plaintiff in error.

*J. M. Terrell, attorney-general, F. A. Hooper, solicitor-general, J. H. Worrill, E. J. Wynn,* and *S. T. Pinkston,* contra.

LEWIS, J.    On the trial of Perryman for the murder of Cade, the accused was found guilty, with a recommendation to the mercy of the court.    He made a motion for a new trial, which was overruled, and he excepted.

1. At the conclusion of the evidence for the State, counsel for the State requested time for a consultation.    This request was refused, the court stating that counsel had had time for consultation before the case came to trial.    This is assigned as error in the bill of exceptions.    While we are not prepared to reverse the judgment of the trial court on this ground, we are decidedly of the opinion that it would have been the better practice to grant this request. In capital cases, the gravity of the situation of the accused, who has his life or liberty at stake, would seem to dictate that he be granted every reasonable privilege that may aid him in making out his defense.    It is not enough to say that his counsel have had time to consult before the trial of the case, because no counsel can tell with certainty, before going into the trial, what evidence will be introduced by the opposing side.    We are unable to see how any harm could have resulted from allowing a reasonable time for consultation by counsel for the accused, when so requested.    At the same time, it is a well-recognized principle of our law that the judges of superior and city courts are invested with a wide discretion in the management of the business before them, and this discretion will not be controlled unless it is shown to have been manifestly abused. *Carr* v. *State,* 76 *Ga.* 593 (2, c); *Pearce* v. *State,* 79 *Ga.* 437.    Such a showing was not made in the present case, nor was it distinctly made to appear that the accused was injuriously affected by the conduct of which he complains; and, as the verdict returned by the jury was plainly demanded by the evidence, we will not interfere with the judgment of the lower court on this ground.

2. The accused sought to introduce evidence tending to show that on the day of the homicide, and just prior thereto, he was informed

that the deceased had been circulating slanderous and malicious stories concerning his wife, which tended to blacken her character and ruin her reputation; that immediately after receiving this information, the deceased passed in front of his house and within the range of his vision, and that the sight of the deceased, under the circumstances, threw him into such a violent rage that he lost all control of himself, rushed out into the road, and killed the deceased. This evidence was not admissible, and was properly excluded by the trial court. It is not contended that the accused slew the deceased in an effort to prevent any offense against the chastity, or even against the reputation of his wife, nor were the alleged slanderous words claimed to have been uttered in the presence of the accused. It is well settled by the Penal Code, § 65, that provocation by words shall not be sufficient to reduce a homicide from the grade of murder to that of voluntary manslaughter. To support the contention of counsel for the accused, it would be necessary to go even further and hold that provocation, not by words, but by hearing a report that words had been spoken, would mitigate the offense. To state such a position is to pronounce its absurdity.

3. It appears from the evidence that the deceased was old and infirm, while the accused was much younger and more vigorous; that the deceased was unarmed at the time of the tragedy; that the accused came suddenly upon the deceased and charged him with having made the slanderous remarks concerning his wife to which reference has been made; that the deceased promptly denied having made any such statements; and that the accused thereupon, without giving any warning, drew his pistol and opened fire on the deceased. The deceased turned and ran, begging the accused not to shoot him, but his appeals for mercy were disregarded, and he was shot five times, most of the wounds being in the back. It would be hard to imagine a more cruel case of murder. The record does not disclose any error of law requiring the grant of a new trial, and the judgment of the trial court overruling the motion will not be disturbed.

*Judgment affirmed. All the Justices concurring.*