### 55580, 55581. FARMER v. HOLTON (two cases).

WEBB, Judge.

During the course of the retrial as to sentence of one George Street who had been convicted of murder and armed robbery,[1] attorney Millard Farmer, who at the retrial was counsel for the convicted murderer, was twice adjudged by the trial judge to be guilty of direct criminal contempt of the court. On one contempt charge the sentence was one day in the common jail and on the other the sentence was three days. We find no merit in any of the grounds argued in Farmer's two appeals, and affirm the judgments of conviction.

First Contempt

The trial court adjudged Farmer in direct criminal contempt on September 14, 1977, and sentenced him to confinement for 24 hours in the common jail for contemptuous conduct occurring on that date. The court in its order recited that from the very beginning of the hearings in the sentencing aspect of the Street murder case, the contemnor had interrupted the court while the court ruled on objections and motions, had refused to obey the ruling of the court, had disrupted the proceedings of the court, had refused to allow the court to continue in an orderly manner with the business before it, and had "continually demonstrated, by way of demeanor and words, his contempt for the orderly processes of this court." The order quoted as contemptible conduct by Farmer the following occurrence during the cross

---

[1] *Street v. State,* 238 Ga. 376 (233 SE2d 344) (1977).

examination of the convicted felon, George Street, by the assistant district attorney, M. C. Pritchard: "Q. When did this take place, George? Mr. Farmer: Your Honor, may I object to — I don't mean to harass Mr. Pritchard too awful much, but we will refer to our client George Street by his first name, because that's an affectionate way that we feel about him. And, we've known him a period of time. But, we would insist that when he is referred to by the prosecutors that he be referred to as Mr. . . Mr. Pritchard: In other words, . . . The Court: I will not direct you to do that. Q. Do you have any objection to me calling you George? Mr. Farmer: Yes, sir, Your Honor, I object to — his objection is from us. It is a demeaning thing for you to call black people by their first name and to call white people Mr. We're not going to have a double standard. We're not going to be part of it. And, we're not going to have it. The Court: Objection overruled. You may ask the question. Mr. Farmer: Your Honor, it's a form of discrimination. The Court: The objection is overruled. The objection is noted in the record. Q. George, when did Mr. Strickland. . . Mr. Farmer: Your Honor, I object again to him calling my client George. We have stated repeatedly. He has used the term colored folks and he referred to yesterday them. He said, 'I'll call them whatever they want to be called.' All of those things are racial slurs. This prosecutor is a racist. And, we've got to prevent it from coming through to the jury. We've got to prevent it from coming through to the Court at every state. We resent the fact that he is referring to the client as Mr. We have been through this situation in this State in which a trial judge allowed and told prosecutors and District Attorneys not to call black people Mr. in his Court. That's got to stop in this State if black people are to have equal justice. And, it can't stop if objection is not made to it at a proper time. If he is to address this individual he will address him as he addresses every other witness. He is not his friend. He is trying to have him electrocuted. And, he should address him as Mr. And, I object most strenuously to him using this term and it's being used in a derogatory and a discriminatory way, just as he was using colored and them and they and those kind of terms. They're all derogatory, racial slurs. The Court: Objection overruled. Q. George,

when did . . . Mr. Farmer: Your Honor, I object to him referring to our client. . . Mr. Pritchard: . . . Mr. Farmer: . . . by any name . . . The Court: Don't get up . . . Mr. Farmer: . . . at all. The Court: Have a seat. Mr. Sheriff? Sheriff: Yes, sir. The Court: Sit this gentleman down by the name of Mr. Farmer. Don't make that objection again. I will let you have it as a continuing objection throughout the trial. Mr. Farmer: May we be heard? The Court: No, sir. Mr. Farmer: May we put up evidence? The Court: No, sir. Mr. Farmer: Your Honor, may we argue this motion? The Court: No, sir. It's already been argued all the Court is going to hear it. Mr. Farmer: Your Honor, may I . . . The Court: No, sir. Mr. Farmer: Your Honor, may I have time to prepare a motion? The Court: No, sir. Mr. Farmer: Your Honor, may I prepare a motion? The Court: No, sir. Mr. Farmer: May I make an offer of proof? The Court: No, sir. Mr. Farmer: May I confer with my client? The Court: Not at this point, no, sir. Mr. Farmer: May I advise . . . The Court: Your client is on the stand just like . . . Mr. Farmer: . . . my client regarding his rights? The Court: . . Don't interrupt the Court. Your client is on the stand. You put him on the stand just like any other witness. He will be treated just like any other witness. Mr. Farmer: Your Honor, I . . . The Court: No better or no worse. Mr. Farmer: I didn't put him on the stand to have him discriminated against. The Court: Overruled. Now, don't make that objection again. You have a continuing objection. I mean about the calling him by the name of George. Mr. Farmer: Your Honor, do you object to me calling you Elie? The Court: Mr. Farmer, do not ask the Court any such question as that. That is a direct confront of the Court of its authority. If you do that again I will consider it as a contempt of this Court. Mr. Farmer: What, Your Honor, may I ask the Court. I want to inquire . . . The Court: You are to be quiet at this point and we're going to proceed with the cross examination. Mr. Farmer: When may I make an objection? The Court: Are you going to allow us to proceed with the cross examination of this witness? Mr. Farmer: Your Honor, I feel like in representing my client . . . The Court: Mr. Farmer, this Court finds your continual interruption of the Court, your refusal to allow us to continue with examination of this witness to be in

contempt of the Court. This Court so finds you in contempt of Court. It is the judgment of the Court that you are in contempt of Court. It's the judgment of the Court that you be sentenced to the common jail of this county for a period of 24 hours. Mr. Sheriff?"

## Second Contempt

The second judgment for a direct criminal contempt by Farmer was eight days later, September 22, for his refusal to abide by the rulings of the court by persisting in a line of questioning which the court had repeatedly ruled impermissible, and in attributing improper motives to the court's rulings. Farmer made a direct verbal assault on the court, according to the citation for contempt, by charging it with malicious and arbitrary reasoning in its rulings. Attached as an exhibit to the court's order was a 23-page transcript, consisting in the most part of rambling and often obfuscatory attempts by attorney Farmer to establish that racial prejudice and discrimination had been exhibited by the judge and the prosecution during jury selection, which culminated in the following pertinent exchange: "The Court: . . . Now, we'll deal with this juror situation when they come up. That will go to — probably go to qualifications of that juror. Mr. Farmer: Your Honor, the reason that we wanted to deal with it at this time is to point out to the Court, is that here are things that we are being able to show you and show the Court that's happening. We are not able to find out about everything that happens. We are only able to, I'm sure, know a very, very small part of what is happening. And, the Court has got to take corrective action and the Court has got to deal with this in a way that we've previously suggested in order that it will not happen. And, the Court has got to allow us to inquire into what the Court before lunch and previously wants to cover up. And, that is the racism that exists that's affecting these jurors and affecting Your Honor . . . Mr. Hayes: Your Honor, the State objects to the improper malicious argument he's making on the Court. The Court: All right, Mr. Farmer, the statement that the Court wants to cover it up is a direct contempt of this Court, knowingly made by you. I have repeatedly warned you about this. Again you have sought to make that statement. The Court finds you

in contempt of Court, sir, again. The Court sentences you to 3 days in the county jail, ser. . . . . Mr. Farmer: Your Honor, may I be . . . The Court: . . . service to begin at the termination of this case. That's all. Mr. Farmer: Your Honor, may I be heard on this? The Court: No, sir. Mr. Farmer: Your Honor, may I have counsel to represent me and present evidence on this issue? The Court: No, sir. Mr. Farmer: Your Honor, may I for the purpose of here forward understand what can be my role in representing Mr. Street as far as bringing out the reason that I feel that he is being denied a fair trial. I don't understand, Your Honor? The Court: You'll have to exercise your discretion and your knowledge as an attorney. Mr. Farmer: Your Honor, . . . The Court: That's all. Mr. Farmer: Your Honor, may I . . . The Court: No, sir we're through with that discussion. All right, call the next juror, Mr. Clerk."

1. The power to punish for contempt is inherent in every court of record, and under Code Ann. § 24-104, every court has power to punish for contempt committed in its immediate presence. *Plunkett v. Hamilton,* 136 Ga. 72 (1) (70 SE 781) (1911). "We start with the premise that the right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government and that courts necessarily must possess the means of punishing for contempt when conduct tends directly to prevent the discharge of their functions." Wood v. Georgia, 370 U. S. 375, 383 (82 SC 1364, 8 LE2d 569, 576) (1962).

" 'It is fundamental that every court possesses the inherent power to preserve and enforce order and compel obedience to its judgments and orders, to control the conduct of its officers and all other persons connected with the judicial proceedings before it and to inflict summary punishment for contempt upon any person failing and refusing to obey any lawful order of such court. Code §§ 24-104, 24-105; *Bradley v. State,* 111 Ga. 168, 170 (36 SE 630, 50 LRA 691, 78 ASR 157). This court will not undertake to control the wide discretion vested in the trial court in the exercise of this fundamental power unless it is made to appear that wrong or oppression has resulted from an abuse of such discretion reposed in the court. *Carr v. State,* 76 Ga. 592, 596; *Perryman v. State,* 114 Ga. 545,

546 (40 SE 746).' *Jackson v. State,* 225 Ga. 553, 557 (4) (170 SE2d 281) (1969). See *Garland v. State,* 101 Ga. App. 395, 427 (114 SE2d 176) (1960)." *Young v. Champion,* 142 Ga. App. 687, 691 (236 SE2d 783) (1977).

2. Criminal contempt is that which involves some disrespectful or contumacious conduct toward the court. *Welborn v. Mize,* 107 Ga. App. 427 (130 SE2d 623) (1963). It involves action by the court to compel respect thereto, to vindicate its authority, and to enforce the lawful processes and actions of the court. *Hill v. Bartlett,* 124 Ga. App. 56 (183 SE2d 80) (1971). It is direct and punishable summarily without notice and opportunity to be heard if committed in the presence of the court, and is exempt from those due process requirements. *Moody v. State,* 131 Ga. App. 355, 358 (2), 359 (206 SE2d 79) (1974); *In re Fite,* 11 Ga. App. 665 (2, 3) (76 SE 397) (1912); United States v. Peterson, 456 F2d 1135, 1139 (10th CCA, 1972); Code Ann. § 24-105.[2]

"[T]he right to take such summary action is inherent in courts for their own preservation, is not subject to be abridged by legislative action or otherwise, and ... for a direct contempt committed in the face of the court, one that threatens to scandalize or destroy order in the courtroom the offender 'may be instantly apprehended and immediately imprisoned, without trial or issue, and without other proof than [the judge's] actual knowledge of what occurred; and ... according to an unbroken chain of authorities reaching back to the earliest times, such power, although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions." *Moody v. State,* 131 Ga. App. 355, 359, supra; *White v. George,* 195 Ga.

---

[2] Mayberry v. Pennsylvania, 400 U. S. 455, 463 (91 SC 499, 27 LE2d 532) (1971), does not require a hearing before a separate and independent judge for due process reasons, as argued by attorney Farmer. Mayberry states: "A judge cannot be driven out of a case. Where, however, he does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place."

465, 469 (24 SE2d 787) (1943); *Garland v. State,* 99 Ga. App. 826, 831 (110 SE2d 143) (1959).

3. "[T]he matter is not, strictly speaking, a criminal case, but is only quasi-criminal. It is tried under the rules of civil procedure, rather than under the rules of criminal procedure, and a preponderance of evidence is sufficient to convict the defendant, as against the requirement of removal of any reasonable doubt which prevails in criminal cases." *Hill v. Bartlett,* 124 Ga. App. 56, supra; *Renfroe v. State,* 104 Ga. App. 362, 365 (121 SE2d 811) (1961); *Pedigo v. Celanese Corp. of America,* 205 Ga. 392 (54 SE2d 252) (1949), cert. den. 338 U. S. 937 (70 SC 346, 94 LE 578). If there is any substantial evidence authorizing a finding that the party so charged was guilty of contempt, and that is the trial judge's conclusion, his judgment must be affirmed insofar as the sufficiency of the evidence is concerned. *Nylen v. Tidwell,* 141 Ga. App. 256 (233 SE2d 245) (1977). Questions of contempt if committed in the actual presence of the court are for the court treated with contempt, and the trial court's adjudication of contempt will not be interfered with unless there is a flagrant abuse of discretion. *Crudup v. State,* 106 Ga. App. 833, 838 (129 SE2d 183) (1962); s.c., 218 Ga. 819 (130 SE2d 733) (1963); cert. den. 375 U. S. 829 (84 SC 74, 11 LE2d 61).

4. "No attorney shall ever attempt to argue or explain a case, after having been fully heard, and the opinion of the court has been pronounced, on pain of being considered in contempt." Rule 23, Rules of the Superior Court (Code Ann. § 24-3323). Here attorney Farmer, being an officer of the court and fully cognizant of the foregoing rule, needed no warning to cease persisting in his arguments in view of the rulings of the trial court. He needed no further protection for his client than an adequate record, which presumably was made. Even if the trial judge were in error in some of his rulings, and we do not so hold, it was the duty of counsel to abide by those rulings; and if any right of his client was violated, the remedy was by appeal with which counsel is thoroughly familiar.[3]

---

[3] We would note, however, that apparently, although

5. The cases here present criminal contempt clearly and beyond a reasonable doubt. Counsel's continuous disregard of the court's instructions, his question to the court, "do you object to me calling you Elie?," his verbal assault on the court charging it with malicious and arbitrary reasoning on rulings made during voir dire, and his assertion that the court would not allow him to inquire into "What the court . . . wants to cover up. And, that is the racism that exists that's affecting these jurors and affecting Your Honor . . ." were insulting, contemptuous, and contumacious. As shown by the record, and by virtue of the rules of law stated and particularly Code Ann. § 24-3323, we are unable to say that the trial judge's adjudications of contempt were gross, erroneous or flagrant abuses of discretion. Having conducted himself as the record shows, counsel perforce must abide the consequences.

*Judgments affirmed. Quillian, P. J., and McMurray, J., concur.*

ARGUED APRIL 5, 1978 — DECIDED MAY 4, 1978 — REHEARING DENIED MAY 26, 1978 — 

*John R. Myer,* for appellant.
*Dewey Hayes, District Attorney,* for appellee.

ON MOTION FOR REHEARING.

Attorney Farmer takes issue with our holding that the standard of proof to be applied in contempt actions such as this is the civil standard of a preponderance of the evidence, insisting for the first time that this standard is contrary to the due process requirements established in Craig v. Harney, 331 U. S. 367 (67 SC 1249, 91 LE 1546) (1947). That case is not controlling since it turns upon

---

counsel appeals from judgments giving him four days in jail, he must not have considered the trial judge to have made any harmful error in the retrial, inasmuch as he made no appeal for his client who received a life sentence, the lesser of two sentences applicable to a conviction of murder.

First Amendment rights and the freedom of the press to make public comment on the actions of a judge, requiring a showing that the utterances created a "clear and present danger" to the administration of justice to merit punishment for contempt. We adhere to the authorities cited in the opinion.

*Motion for rehearing denied.*