Theodore Robert **BUNDY**, and Millard C. **Farmer**, Jr., Plaintiffs-Appellants,

v.

John **RUDD** et al., Defendants-Appellees.

No. 78–3026
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 2, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Millard C. Farmer, Jr., pro se.

Albert J. Krieger, Miami, Fla., for plaintiffs-appellants.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Richard A. Hixson, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellees.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

The denial of requested relief and dismissal entered by the Trial Court is affirmed on the basis of the unpublished Order entered by Judge William Stafford on September 15, 1978, appended hereto.

## APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
FLORIDA TALLAHASSEE
DIVISION

THEODORE ROBERT BUNDY,
Leon County Jail
2825 Municipal Way
Tallahassee, Florida 32304

and

MILLARD C. FARMER, JR.,
Suite 831
15 Peachtree Street, N.E.
Atlanta, Georgia 30303

Plaintiffs,

vs.

TCA 78-0897

JOHN RUDD,
In his capacity as Judge
for the Circuit Court of

APPENDIX—Continued

the Second Judicial Circuit,
in Leon County, Florida,

CHARLES M. McCLURE,
In his capacity as Judge
in County Court of Leon
County, Florida, for the
Second Judicial Circuit,

HARRY MORRISON,
In his capacity as State
Attorney in Leon County,
Florida, and in his capacity
of representing the State of
Florida in Criminal Actions
Pending Against Theodore
Robert Bundy in the State of
Florida,

LARRY SIMPSON,
In his capacity as Assistant
State Attorney in Leon County,
Florida, and in his capacity
of Representing the State of
Florida in Criminal Actions
Pending Against Theodore
Robert Bundy in the State of
Florida,

Defendants.

---

## ORDER

Before the court are plaintiffs' motion for preliminary injunction and demand for permanent injunctive and declaratory relief and defendants' motion to dismiss or, in the alternative, to strike.

### I.

The procedural history of this action, as relevant here, unfolds as follows. On July 24, 1978, the Public Defender for the Second Judicial Circuit of Florida moved in Leon County Circuit Court on behalf of Theodore Robert Bundy, co-plaintiff in this case, for leave to have co-plaintiff Millard C. Farmer, Jr. appear with the Public Defender to represent Bundy in the state grand jury proceedings scheduled to commence in Tallahassee on July 25. Attached to the motion was a certificate of Farmer's good standing as an attorney from the Georgia Supreme Court. The Circuit Court reserved ruling on that motion. The Leon County Grand Jury then indicted Bundy for various offenses including first degree murder and burglary. At Bundy's first appearance on these charges on July 28, he moved the County Court to allow Farmer to represent him solely during that proceeding. That motion was denied by the County Judge, defendant Charles M. McClure. Bundy was arraigned in Circuit Court July 31; at that time Farmer requested the right to represent Bundy *pro hac vice* solely for the arraignment but that request was denied by the Circuit Judge, defendant John A. Rudd. At an August 2 hearing on the State's motion to extend time for speedy trial, Farmer once again renewed his motion to represent Bundy *pro hac vice*. Judge Rudd granted Bundy ten additional days to oppose the motion of the state (represented by defendants Harry Morrison and Larry Simpson) for extension of time and orally denied Bundy's August 2 motion requesting Judge Rudd to disqualify himself. A written order to that effect was entered the next day by Judge Rudd along with an order denying Farmer the right to represent Bundy *pro hac vice*. Bundy filed a *pro se* petition for writ of common law certiorari with the Supreme Court of Florida on August 4, 1978, requesting an order from that court directing the state to show cause why he was being denied his Sixth Amendment right to counsel. Also on August 4 Bundy and Farmer filed this 42 U.S.C. § 1983 action, requesting preliminary and permanent injunctions along with declaratory relief, the gravamen of the complaint alleging a denial of plaintiffs' rights to due process, to equal protection and to counsel. Chief Judge Arnow of this court denied plaintiffs' respective motions for a preliminary injunction following a hearing on August 11. On August 14 plaintiffs filed their joint petition with the Florida Supreme Court seeking writs of certiorari, mandamus and prohibition, with both Farmer and Bundy alleging violations of their First, Fifth, Sixth and Fourteenth Amendment rights. On August 21, 1978,

the Supreme Court of Florida denied all of plaintiffs' writs without opinion. On August 23 defendants filed a motion to dismiss in this case, and on August 28 both plaintiffs renewed their requests here for preliminary injunction. This court held a hearing on all pending motions on September 6, at which time counsel announced that all evidence, legal authority and pleadings were before the court and that this matter was ripe for disposition.

## II.

Defendants claim that plaintiffs amended their complaint the second time without receiving, or even seeking, leave of court as required by Rule 15(a) Fed.R.Civ.P. Inquiry at the September 6 hearing demonstrated no prejudice to defendants from allowing the amendment, and, accordingly, plaintiffs were then granted leave to file their second amended complaint.

Plaintiffs advance two separate theories in this case. In spartan terms, plaintiff Bundy requests relief from an alleged denial of his Sixth Amendment right to counsel, while plaintiff Farmer contends that he was denied the essentials of due process required prior to deprivation of liberty or property interest under the Fourteenth Amendment.

Defendants, in turn, seek dismissal of all claims here, contending alternatively that this court should abstain in deference to the state court, that Farmer has been accorded whatever due process he is entitled to receive, and that plaintiffs' proper remedy, in any event, is to seek review in the United States Supreme Court under 28 U.S.C. § 1257.

The claims of each plaintiff will be considered separately.

## III.

■ Plaintiff Bundy, indicted for numerous state felonies, including capital offenses, asks this federal court to order the state trial court to allow plaintiff Farmer, not a member of The Florida Bar, to represent Bundy in his pending criminal cases. The Public Defender's office was appointed by the Florida state courts to represent Bundy; however, with the appearance of plaintiff Farmer on the scene, Bundy has now refused the services of the Public Defender. The Public Defender remains available to represent Bundy,[1] but Bundy wants Farmer to be his lawyer. Farmer is equally anxious to represent Bundy. To refuse these mutual requests, says Bundy, is to deny him his Sixth Amendment right to counsel.

To grant Bundy's request would result in this court's ordering the state trial judge before whom the criminal case is pending to permit a *pro hac vice* appearance by an attorney already refused such admission by that same state judge, a direct interference with the ongoing state criminal prosecution.

If there was ever a doubt as to the propriety or wisdom of federal district court intrusion into pending state criminal proceedings, that doubt was removed by the decision of the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Citing first the traditional equitable principle that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief" *Id.* at 43–44, 91 S.Ct. at 750, the Court then articulated

> an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the

---

1. Fla.Stat. §§ 27.53 and 925.035 authorize state trial courts by special assignment to appoint members of the bar in good standing to represent indigent defendants with fees, costs and expenses fixed by the court and paid by the state.

fact that the entire country is made up of a Union of separate governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 44, 91 S.Ct. at 750.

The late Justice Hugo Black, writing for the majority in *Younger*, analyzed the historic and contemporary application of this concept:

The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

*Id.* at 44–45, 91 S.Ct. at 750.

The fact that the defendants also seek a declaratory judgment, ostensibly a less onerous intrusion on the state criminal proceedings, is of no moment. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), decided the same day as *Younger*, holds that whether the relief sought is declaratory judgment or injunction, the federal interference with the pending state criminal prosecution is the same.

In its August 23, 1978 decision in *Gibson v. Jackson*, 578 F.2d 1045, the Fifth Circuit Court of Appeals, while cautioning that the abstention doctrine of *Younger* and its progeny is to be applied on a case-by-case basis and "determined by principled discretion not doctrinaire adherence," nevertheless vacated the judgment of the federal district court which had ordered the State of Georgia to furnish court-appointed counsel and other monetary assistance in state habeas corpus proceedings to a state defendant sentenced to death. Perhaps apropos in the context of this case is the special concurring opinion of two of the three judges in *Gibson*, that opinion expressing the view that cases where the death penalty is involved should not be governed by a special category of safeguards different from those cases where a lesser penalty is imposed.

Application of the principles of *Younger* and *Gibson* to the case at bar mandates that this court stay its hand as to Bundy's claims.

## IV.

■ Plaintiff Farmer seeks a hearing in the state court, alleging that the proceedings there to date did not afford him due process and resulted in a denial of his property and liberty interests. Defendants deny that Farmer has such interests, maintaining that whatever due process rights he had were protected by the state court. Defendants would also have this court apply *Younger*-type abstention to his claims.

Merely ordering the state court to hold a further hearing on Farmer's own claims would not prejudice, or interfere with, the conduct of Bundy's trial on the merits. *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The "equitable restrictions" of *Younger* are not aimed at collateral issues in state criminal proceedings; therefore, *Younger* principles will not dispose of Farmer's contentions. Accordingly, the court turns to his due process claim.

■ Plaintiff Farmer has asserted an interest he characterizes as a deprivation of a

"substantial right or status." If by that allegation he attempts to establish a property interest sufficient to invoke due process, then he fails in that regard.

> Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits.

*Goss v. Lopez*, 419 U.S. 565, 572, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975). *See, e. g., Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976), vacated 436 U.S. ——, 98 S.Ct. 3118, 57 L.Ed.2d 1144, *on remand*, 578 F.2d 1167 (1978).[2] Farmer has referred this court to no such independent source. Without "more than an abstract need or desire . . . [o]r a legitimate claim of entitlement" to represent Bundy, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1977), Farmer's claim cannot rise to the level of a property right.

▮ Alternatively, in his attempt to assert a denial of liberty sufficient to invoke due process, Farmer alleges an injury to his "professional reputation and character," a "badge of infamy" and "contamination" to his reputation. *Dennis v. S & S Consolidated Rural H. S. Dist.*, 577 F.2d 338 (5th Cir. 1978), elaborated upon the liberty interest test discussed in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Fifth Circuit calling it "stigma-plus."

> To establish a liberty interest sufficient to implicate Fourteenth Amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law.

*Dennis* at 341. Assuming, *arguendo*, that Farmer has been stigmatized by not being allowed to represent Bundy in the state criminal proceedings, it is difficult to determine what previously recognized right or status under state law he has been denied. Indeed, Farmer has not pointed to any such right or status. Certainly, his claimed *pro hac vice* appearance in other Florida courts does not create a sufficient "plus" to make his reputation a constitutionally protected liberty interest. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (employment termination cases). This claim of Farmer's likewise must fail.

Farmer maintains, however, that he is entitled to relief here because of the Sixth Circuit holding in *Flynt v. Leis*, 574 F.2d 874 (6th Cir. 1978), *appeal docketed*, 46 U.S. L.W. 3723 (May 23, 1978). In *Flynt* the out-of-state attorneys had already been admitted *pro hac vice* by one state court judge to represent the defendants, when suddenly the judge to whom the case was assigned for trial summarily, without notice, without hearing and with no reason given, revoked their admission and would not allow them to participate further as counsel in the case. The out-of-state attorneys in *Flynt* had previously appeared as trial counsel in the same judge's court without incident and were found by the Sixth Circuit "to have exemplary academic and professional qualifications." *Flynt* at 876. Without deciding what the nature of these attorneys' interest was when they originally sought admission, the Sixth Circuit found that once the state court had authorized them to act, their interest had advanced to the stage where they could not be denied the right to further appear for their clients "without a meaningful hearing, the application of a reasonably clear legal standard and the statement of a rational basis for exclusion." *Flynt* at 879. Finding that none of these due process requirements were present and rejecting the *Younger* abstention argument, the Sixth Circuit affirmed the district

---

2. *Thurston* had been vacated only in regard to the award of back pay and still stands as good law on the question of due process.

court which had enjoined the state prosecution until the attorneys were granted a due process hearing. This is the same relief Farmer seeks from this district court.

██ What occurred in *Flynt* is far different from the case at bar. Farmer has never been admitted to practice in the state courts of Leon County, and particularly has not been permitted to appear *pro hac vice* in his representation of Mr. Bundy by any judge in Leon County. He had, thus, not acquired the status as counsel of record as the out-of-state attorneys in *Flynt* had done. Further, the state court had before it a reported decision reflecting adversely upon Mr. Farmer's conduct as trial counsel in the State of Georgia where he is admitted to practice. In *Farmer v. Holton*, 146 Ga.App. 102, 245 S.E.2d 457 (1978), the Georgia Court of Appeals reviewed the judgment of the trial court which found Mr. Farmer guilty of direct criminal contempt twice in connection with the same proceeding. In affirming Mr. Farmer's convictions of contempt the Georgia Court of Appeals found that Mr. Farmer's "continuous disregard of the court's instruction, his question to the court, . . ., his verbal assault on the court charging it with malicious and arbitrary reasoning on rulings made during voir dire," and his other assertions were "insulting, contemptuous and contumacious." The Georgia Court of Appeals, therefore, found that such conduct presented "criminal contempt clearly and beyond a reasonable doubt." On September 14, 1978 the Georgia Supreme Court denied Mr. Farmer's petition for writ of certiorari. The state court judge applied to this finding of contemptuous conduct the American Bar Association Standards Relating to the Function of the Trial Judge, § 3.5 (1972), which reads in part:

3.5 Attorneys from other jurisdictions.

If an attorney who is not admitted to practice in the jurisdiction of the court petitions for permission to represent a defendant, the trial judge may

(a) deny such permission if the attorney has been held in contempt of court or otherwise formally disciplined for courtroom misconduct, or if it appears by reliable evidence that he has engaged in courtroom misconduct sufficient to warrant disciplinary action; . . .

This is sufficient to satisfy the *Flynt* requirement that the denial of admission to appear *pro hac vice* be based upon "a reasonably clear standard and a statement of reasons." *Flynt* at 877. Other sections of the same ABA standards were quoted with approval by the Fifth Circuit in *United States v. Dinitz*, 538 F.2d 1214 (5th Cir. 1976).

*Flynt* also discusses the need for a hearing, and in this context consideration of the Fifth Circuit decisions in *In re Evans*, 524 F.2d 1004 (5th Cir. 1975) and *Dinitz, supra,* is appropriate. Read together, *Dinitz* and *Evans* suggest that "fundamental fairness may require . . . a hearing in most . . . situations" where admission *pro hac vice* is denied.[3] Farmer has already been heard by the Florida state court judge, but claims that that hearing was not adequate. Farmer's situation presents an instance where the *Dinitz* rationale would not require a further hearing in the Florida state court because the only purpose such a further hearing would serve would be to permit Mr. Farmer to relitigate in the Florida courts the underlying issues resulting in the judgments of contempt against him in Georgia. He clearly is estopped from doing this. Thus, requiring the state court to hold a further hearing on these issues would be both unnecessary and unproductive.

The court, having considered all of the claims pursued by Farmer, finds that he, like Bundy, cannot prevail in this case.[4]

---

**3.** Since *Evans* and *Dinitz* dealt with admission *pro hac vice* in federal district court, it is not clear to what extent their collective rationale applies to the state courts.

**4.** In their pleadings, plaintiffs alluded to an equal protection claim. Yet no deprivation of any protected right was briefed or argued to this court. Therefore, it is not considered.

## IV.

Accordingly, it is ORDERED:

1. Plaintiffs' motion for preliminary injunction and their demands for permanent injunctive and declaratory relief are hereby DENIED.

2. Defendants' motion to dismiss is GRANTED.

3. This cause is dismissed with prejudice with each party to bear his own costs.

4. The clerk of this court will enter judgment accordingly.

---

Defendants contend that 28 U.S.C. § 1257 should prevent this federal district court from consideration of plaintiffs' cases, arguing that review of the Florida Supreme Court's August 21, 1978, order lies in the United States Supreme Court. However, as a result of this court's disposition of plaintiffs' claims, the § 1257 argument need not be considered.