## 41985. SMITH v. SMITH.
(330 SE2d 706)

SMITH, Justice.

Appellant Peter S. Smith, a nonresident, was personally served in Colorado pursuant to the domestic relations section of the Georgia Long-Arm Statute, OCGA § 9-10-91 (5), after appellee Mrs. Rosella R. Smith, a Georgia resident, filed a petition for contempt and modification of their 1982 Georgia divorce decree. Appellant filed a plea to the jurisdiction and motion to quash service which was denied by the trial court. The trial court granted a certificate of immediate review, and we granted appellant's application for discretionary appeal. We affirm.

The Smiths moved to Georgia in 1980, and in 1982 they were granted a divorce in the DeKalb County Superior Court. Appellee was awarded permanent alimony and twenty-five percent (25%) of all bonuses received by appellant (his bonuses had been substantial). Appellant was also required to pay certain medical expenses incurred by appellee. Appellant was transferred to Colorado in 1983. After moving, he failed to pay appellee under the bonus provision of the agreement, contending that he was no longer under a bonus system. He also refused to provide appellee with substantiation regarding the bonuses as required by the decree.

Appellant and his employer were served with notices to produce relating to the manner in which appellant was compensated. He answered stating, among other things, that he was not subject to the jurisdiction of the State of Georgia and that the Long-Arm Statute was inapplicable to modification or contempt actions against nonresident defendants. The employer's answer showed that appellant had received "$8,000 in additional compensation for 1983."

Attorney for appellee stated during oral argument that appellant moved after this litigation began, and that he is presently residing in New Jersey.

1. Appellant contends, as his second enumeration of error, that the trial court erred in holding that OCGA § 9-10-91 (5) is applicable to post judgment modification of alimony.

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. . . ." OCGA § 1-3-1 (a). The old law made it virtually impossible to bring actions in domestic cases once the defendant became a nonresident unless the defendant could be lured back into the state to be personally served. The evil was that many needy spouses and children were without an effective and complete remedy to enforce or modify court-ordered judgments against nonresidents. In 1976 we approved the use of Florida's Long-Arm Statute to obtain personal jurisdiction over a Georgia defendant

who had previously maintained a marital domicile in Florida. *Whitaker v. Whitaker*, 237 Ga. 895 (230 SE2d 486) (1976). Later in *Warren v. Warren*, 249 Ga. 130, 131 (287 SE2d 524) (1982), we noted with disapproval the fact that other states had enacted domestic relations Long-Arm Statutes, but our legislature had failed to do so. Within a year, the General Assembly enacted subsection (5) of OCGA § 9-10-91, the domestic relations subsection of our Long-Arm Statute.[1] Subsection (5) was patterned after the Florida statute that we had studied and approved in *Whitaker*, supra, six years earlier. Thus, subsection (5) became the remedy.

Appellant argued that an action for modification of alimony was not contemplated by the legislature. He reasoned that it is not "in connection with an action for divorce," nor is it "an independent action for the support of dependents," because a former spouse is not a dependent.[2] Appellant would have us limit "dependents" to children.

Funk and Wagnalls Standard Dictionary includes in its definitions of "dependent," "Relying on someone or something for support." Under the laws of Georgia, "Alimony is an allowance out of one party's estate, made for the *support* of the other party when living separately. It is either temporary or permanent." (Emphasis supplied.) OCGA § 19-6-1 (a). "The purpose of alimony is to provide *support* for the [needy spouse] and minor children, . . . [Cit.]" (Emphasis supplied.) *McCurry v. McCurry*, 223 Ga. 334, 335 (155 SE2d 378) (1967).[3] It is obvious that one who is receiving or is supposed to receive alimony is a dependent under OCGA § 9-10-91 (5).

We would be ignoring the legislature's rational intent if we allow children to use the domestic relations subsection of the Long-Arm Statute, *Lee v. Pace*, 252 Ga. 546, 547 (315 SE2d 417) (1984), and deny the same privilege to spouses, when the legislature provided both children and spouses the right to seek modification under the same code sections, OCGA §§ 19-6-18 and 19-6-19.

---

[1] "A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he: . . . (5) With respect to proceedings for alimony, child support, or division of property in connection with an action for divorce or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph shall not change the residency requirement for filing an action for divorce. (Ga. L. 1966, p. 343, § 1, Ga. L. 1970, p. 443, § 1; Ga. L. 1983, p. 1304, § 1.)" OCGA § 9-10-91 (5).

[2] We find *Schroeder v. Schroeder*, 430 S2d 604 (1983), clearly distinguishable. Furthermore, it was decided on May 4, 1983, and our statute was enacted on March 29, 1983, thus, we have no compelling reason to consider the case in reaching our decision.

[3] "The term [alimony] is derived from a Latin word which primarily meant to nourish; that is to supply the necessities of life." *Lloyd v. Lloyd*, 183 Ga. 751, 752 (189 SE 903) (1937).

We find that the legislature intended by enacting subsection (5) to allow children and spouses to seek modification against nonresident defendants "in the same manner as if [the nonresident] were a resident of the state, . . ." OCGA § 9-10-91.

2. Appellant asserts, as his third enumeration of error, that OCGA § 9-10-91 (5) is not applicable to contempt actions.

Again we must look to the words of the statute and the legislative intent. We must decide whether a contempt action is "an independent action for the support of dependents" or whether it is "a cause of action arising from . . . proceedings . . . in connection with an action for divorce . . . ." The statute, provides in part, "A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from . . . proceedings for alimony, child support, or division of property in connection with an action for divorce . . . ." Under the laws of Georgia, "[A]n application for contempt to enforce an alimony and child support judgment is ancillary to the primary action and an incident of the divorce and alimony action. [Cits.]" *Hines v. Hines*, 237 Ga. 755, 756 (229 SE2d 744) (1976). The contempt action being an "incident of the divorce and alimony action," necessarily is a "cause of action arising from . . . proceedings . . . in connection with an action for divorce . . . ."

The state has a substantial interest in enforcement of all of the orders of its courts, *Farmer v. Holton*, 146 Ga. App. 102, 106 (245 SE2d 457) (1978), cert. den. 440 U. S. 958 (99 SC 1499, 59 LE2d 771) (1978), and an especially strong interest in enforcement of alimony judgments.[4]

A statute will not be given a construction that will defeat its purpose. The purpose of the statute is to afford a full and effective remedy to needy spouses and children and we will not give the statute a construction that will defeat the legislative intent.

3. Appellant asserts, as his first enumeration of error, that the trial court erred in denying his plea to the jurisdiction and motion to quash service because OCGA § 9-10-91 (5) is unconstitutional.

"Each defendant's contacts with the forum state must be assessed individually. See *Rush v. Savchuck*, 444 U. S. 332, 100 S.Ct. at 579 ('The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction')." *Calder v. Jones*, ___ U. S. ___ (104 SC 1482, 1487, 79 LE2d 804) (1984).

---

[4] "[W]hen a court directs the payment of alimony . . ., it is a duty [owed], not only to [the needy spouse] but to the public, . . ." *Lewis v. Lewis*, 80 Ga. 706 (6 SE 918) (1888), and an order to pay alimony "[E]xpressly commands the payment of support, which is a duty in which society has a substantial interest. [Cits.]" *Wilson v. Chumney*, 214 Ga. 120, 121 (103 SE2d 552) (1958).

"[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Intl. Shoe v. Washington*, 326 U. S. 310, 316 (66 SC 154, 90 LE 95) (1945).

Our courts have considered the "minimum contacts" needed to confer personal jurisdiction over a nonresident. Three rules to determine the power of this state to exercise jurisdiction over a nonresident have been gleaned. The rules are: "(1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum . . . ; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum and (3) If (and only if) the requirements of Rules 1 and 2 are established, a 'minimum contact' between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of 'fair play' and 'substantial justice.' In other words, the exercise of jurisdiction based upon the 'minimum contact' must be 'reasonable.' " *Shellenberger v. Tanner*, 138 Ga. App. 399, 404-405 (227 SE2d 266) (1976).

(a) With these rules in mind, we will apply them to the facts before us. Appellant purposefully availed himself of the privilege of maintaining a matrimonial domicile in Georgia in which he incurred certain rights and obligations. He purposefully availed himself of the privilege of using the Georgia courts in dissolving his marriage. As a result, he was granted certain rights and obligations under both the laws of this state and the final judgment. He continued to reside within the state for some time after the dissolution of his marriage. During the time he resided within the state and after he left the state he availed himself of the benefits and protection of the laws of Georgia. The Georgia courts remain open to him to enforce the rights granted to him under the laws of Georgia and the terms of the divorce.

(b) The appellee has a legal cause of action against the nonresident appellant which "Arises out of or results from" their matrimonial domicile and their Georgia divorce. The State of Georgia has a strong state interest in the litigation. "The strongest governmental purpose for Georgia's alimony laws is the provision of support for a needy spouse." *Sims v. Sims*, 245 Ga. 680, 683 (266 SE2d 493) (1980).

(c) The minimum contacts must be contacts with the forum and not just a connection with a resident plaintiff.[5] But, the contacts enu-

---

[5] When we have looked for the "minimum contacts" necessary for other states to obtain

merated above are made even stronger by appellant's connection with the appellee. "[P]laintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." *Keeton v. Hustler Magazine, Inc.*, ___ U. S. ___ (104 SC 1473, 1481, 79 LE2d 790) (1984).[6]

We find the exercise of jurisdiction over appellant consonant with due process notions of "fair play" and "substantial justice" because: (1) Georgia has a legitimate interest in protecting resident spouses and children; (2) The courts of Georgia remain open to appellant to enforce his rights, and he enjoys the benefits and protection of the laws of Georgia; (3) The inconvenience to appellant is outweighed by the inconvenience to appellee who would be forced to sue in a foreign forum on a cause of action which arose from their Georgia matrimonial domicile and their Georgia divorce. "[B]asic considerations of fairness point decisively in favor of [appellee's] State of domicile as the proper forum for adjudication of this case, whatever the merits of [the] underlying claim. It is [appellee] who has remained in the State of the marital domicile, where it is [appellant] who has moved across the continent. [Cit.]" *Kulko v. Superior Court*, 436 U. S. 84, 97 (98 SC 1690, 56 LE2d 132) (1978). It would cause appellee "substantial financial burden and personal strain," *Kulko*, supra at p. 98, to have to follow appellant from Georgia to Colorado and then to New Jersey to enforce her rights; and (4) The legislature gave the courts of this state through the domestic relations subsection of the Long-Arm Statute the authority to entertain litigation against nonresidents who incur some form of family related obligation while maintaining a matrimonial domicile or while residing within this state. This appellant could "reasonably anticipate being haled into court" in Georgia. *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297 (100 SC 559, 62 LE2d 490) (1980). We find no error.

4. Our decision above renders appellant's fourth enumeration of error moot.

*Judgment affirmed. All the Justices concur, except Hill, C. J., who dissents.*

---

in personam jurisdiction over Georgia residents, we have found, "Mrs. Whitaker had sufficient connection with the State of Florida, by virtue of her residing there while married to Mr. Whitaker prior to his commencement of the divorce action, to confer subject-matter jurisdiction and personal jurisdiction of her in this Florida domestic relations action." *Whitaker v. Whitaker*, 237 Ga. 895, 898 (230 SE2d 486) (1976). The Court of Appeals in *Gray v. Loper*, 163 Ga. App. 552 (295 SE2d 229) (1982), when faced with an Alabama Long-Arm Statute relied on *Whitaker*, supra, where "it was held that there were sufficient contacts with the forum state to satisfy in personam jurisdiction . . ."

[6] In a domestic relations case, contacts with the forum will almost always be enhanced because of the close relationships that exist between plaintiffs and defendants which may include: present or former husbands and wives, parents and children, and obligors and obligees of support.

HILL, Chief Justice, dissenting.

The Code section in issue, subsection 5 of OCGA § 9-10-91, provides "long arm" jurisdiction "with respect to proceedings for alimony, child support, or division of property in connection with an action for divorce or with respect to an independent action for support of dependents." As I read the Code section, the words "an independent action for support of dependents" refer to a petition for alimony or child support when there is no action for divorce pending. See OCGA § 19-6-10. Therefore, a petition for modification of alimony is not "an independent action for support" within the meaning of the Code section. Additionally, a petition for modification is not a proceeding "for alimony, child support, or division of property *in connection with an action for divorce.*" (Emphasis supplied.) I therefore dissent to Division 1 of the majority opinion.

Similarly, in my view a petition for contempt is not a proceeding "in connection with an action for divorce" or "an independent action for support of dependents" within the meaning of the Code section. I therefore dissent to Division 2 of the majority opinion. Thus, I would not reach the issue as to the constitutionality of the Code section, which in my view presents a substantial question.

DECIDED JUNE 18, 1985.

*Turner, Turner & Turner, Jack P. Turner, Richard W. Schiffman, Jr.,* for appellant.
*Paul R. Koehler, Angela R. Arkin,* for appellee.