695 P.2d 1103

Brian Keith SCHILZ, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Robert Pickrell, a Judge thereof, and The State of Oregon and Maricopa County Attorney's Office, Real Parties in Interest, Respondents.

No. 17528–SA.

Supreme Court of Arizona, En Banc.

Feb. 7, 1985.

Morris, Walker & Mecham by Mike Walker, Jeffrey A. Murphy, Phoenix, for petitioner.

Thomas E. Collins, Maricopa County Atty. by C.O. Lamp, Deputy County Atty., Phoenix, for respondents.

HOLOHAN, Chief Justice.

Petitioner brings this special action challenging the ruling of the respondent trial judge granting, over petitioner's objections, full faith and credit to a New Mexico judgment establishing petitioner's paternity of a certain child. We accepted jurisdiction under Ariz. Const. Art. 6, § 5 and Arizona Rules of Special Actions 4, 17A A.R.S. because petitioner has no equally plain, speedy, and adequate remedy by appeal.

The relevant uncontested facts are that petitioner and Joycelene Osborn were married in Gallup, New Mexico on May 27, 1979 and thereafter moved and lived in Peoria, Arizona. The parties separated in September 1979 and Joycelene moved to New Mexico with her child Kevin who had been born out of wedlock in 1976. A daughter, Kathlyn, was born on March 8, 1980.

On April 24, 1980, Joycelene filed a petition for dissolution of the marriage in the New Mexico District Court, alleging, in relevant part, that petitioner acknowledged paternity of Kevin, recognized his duty of support, and consented to the court's decreeing that such paternity and duty of support existed. The petition and summons were served on petitioner in Arizona by a Maricopa County deputy sheriff. Petitioner elected not to appear and contest the action. On November 16, 1980, the New Mexico trial court found petitioner in default and entered a decree of dissolution of marriage which granted the dissolution, found petitioner to be Kevin's father, and ordered the payment of monthly child support for both Kevin and Kathlyn.

At about that time, Joycelene Osborn and her children moved to the state of Oregon and became dependent on public assistance. Respondent State of Oregon, in October of 1980 (before the dissolution), initiated an Oregon petition for support of the two children against petitioner. On October 24, 1980, the Circuit Court of Oregon certified the petition and ordered the matter referred to the Superior Court of Maricopa County pursuant to the Oregon Uniform Reciprocal Enforcement of Support Act (URESA).

In January of 1981, Maricopa County Court Commissioner Roy R. Carson, in conformity with URESA, issued petitioner an order to show cause why he did not have a duty to support the children. Petitioner appeared and denied having had sexual relations with Joycelene during the medical, legal conception period for Kevin. Commissioner Carson found that petitioner owed a duty of support for Kathlyn but found petitioner's denial of paternity "not frivolous" and adjourned the hearing as to that matter.

On approximately December 14, 1983, respondent Maricopa County Attorney's Office filed a motion for an order to establish support of Kevin. It relied on both the New Mexico decree of dissolution, which had been sent by Oregon after the previous hearing was adjourned, and a handwritten letter which allegedly had been sent by petitioner to Joycelene's lawyer at the time of the dissolution proceedings in which he implied that Kevin was his natural child. Petitioner then filed a response to the motion to establish support order and a supplemental memorandum, both of which asserted that the New Mexico judgment was not entitled to full faith and credit because the New Mexico court had not had proper jurisdiction to make a finding of paternity. On March 23, 1984 respondent Judge Rob-

ert Pickrell denied petitioner's objection and reset a hearing on the motion to establish support which was continued on April 5. We then stayed the proceeding below and subsequently accepted jurisdiction.

The sole issue in this case is whether Judge Pickrell abused his discretion in according full faith and credit to the New Mexico judgment of paternity without granting a hearing on the claim of no jurisdiction.

■ "The full faith and credit clause of the United States Constitution requires that a judgment validly rendered in one state's court be accorded the same validity and effect in every other court in the country as it had in the state rendering it." *Lofts v. Superior Court*, 140 Ariz. 407, 410, 682 P.2d 412, 415 (1984). If the first state's court lacked personal jurisdiction to render the judgment, however, the judgment need not be given effect. *Phares v. Nutter*, 125 Ariz. 291, 609 P.2d 561 (1980) (contract); *Smart v. Cantor*, 117 Ariz. 539, 574 P.2d 27 (1977) (child custody); *see also, Barker v. Barker*, 94 N.M. 162, 608 P.2d 138 (1980) (divorce). The New Mexico dissolution decree states "[t]he Court based on personal service upon the Respondent in Maricopa County, Phoenix, Arizona, has jurisdiction of the subject matter and the parties." The court, however, gave no specific reasons for its finding. Petitioner's motion in the Arizona superior court challenging the New Mexico court's jurisdiction was denied, without a hearing.

■ Had the issue of jurisdiction been contested in the New Mexico proceeding through an appearance by petitioner or his attorney and fully and fairly litigated and finally decided there, we would not be questioning that court's jurisdiction. *Lofts, supra*, 140 Ariz. at 410, 682 P.2d at 415; *State v. Drury*, 110 Ariz. 447, 520 P.2d 495 (1974); 47 Am.Jur.2d, *Judgments*, § 933 (1969). Petitioner acted within his rights, however, in foregoing his opportunity to litigate in New Mexico, thereby compelling respondents to come to Arizona and litigate the fundamental issue of jurisdiction.

■ The New Mexico decree of dissolution specifically adopted as its findings of fact the allegations contained in Joycelene's petition for dissolution. The first of these allegations, that Joycelene was domiciled in New Mexico and had resided there for more than six months, combined with Joycelene's appearance before the New Mexico trial court, was sufficient to afford that court jurisdiction over the dissolution itself as it fulfills the domicile requirement of New Mexico Statutes Annotated (N.M. S.A.) § 40-4-5, New Mexico's dissolution statute. Such an action does not require personal jurisdiction over both spouses as it is an action *in rem* over the marriage status. *Williams v. North Carolina* (I), 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273 (1942). Jurisdiction over the divorce does not necessarily imply jurisdiction over related proceedings, however. *Worland v. Worland*, 89 N.M. 291, 551 P.2d 981 (1976) (no jurisdiction to award child custody when father and child lived in Colorado); *Price v. Price*, 134 Ariz. 112, 654 P.2d 46 (App.1982) (no jurisdiction to decree settlement of property in foreign state when no personal jurisdiction over spouse). The contention that paternity is an action *in rem* "has been universally rejected ... on the ground that there exists a fundamental difference between actions such as divorce which merely sever a personal status—although they may continue preexisting obligations—and actions like paternity which impose new affirmative duties and obligations." *Developments in the Law—State Court Jurisdiction*, 73 Harv.L.Rev. 909, 980; *see, e.g., Conlon by Conlon v. Heckler*, 719 F.2d 788 (5th Cir. 1983), *quoting Hartford v. Superior Court*, 47 Cal.2d 447, 304 P.2d 1 (1956) (Traynor, J.); *Brondum v. Cox*, 292 N.C. 192, 232 S.E.2d 687 (1977). Thus personal jurisdiction over the putative father is required in paternity actions. N.M.S.A.

§ 40–5–9; *State v. Jojola,* 99 N.M. 500, 660 P.2d 590, *cert. denied* — U.S. ——, 104 S.Ct. 49, 78 L.Ed.2d 69 (1983); *In re Hindi,* 71 Ariz. 17, 222 P.2d 991 (1950) (pre-long arm statute); *Bebeau v. Berger,* 22 Ariz. App. 522, 529 P.2d 234 (1975); *see also, May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) (*in personam* jurisdiction required to cut off child custody rights of a nonresident parent). The remaining allegations in the petition for dissolution allege the date and location of the marriage, the birthdates of the two children, the incompatibility of the parties, the satisfactory division of the community property, and petitioner's acknowledgment of paternity of Kevin and his duty to support him. Of these, only the occurrence of the marriage placed petitioner within the borders of New Mexico at any time. There was no allegation in the petition that the child Kevin was conceived or born in New Mexico.

▆▆▆▆ To satisfy the due process clause of the United States Constitution, a nonresident defendant must have reasonable notice that an action has been brought and sufficient connection with the forum so that it is *reasonable* and *fair* to require the defendant to defend the action there. *Kulko v. Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132, 141 (1978); *Northern Propane Gas Co. v. Kipps,* 127 Ariz. 522, 622 P.2d 469 (1981); *see also, United Nuclear Corp. v. General Atomic Co.,* 90 N.M. 97, 560 P.2d 161 (1976). Sufficient connection can occur if the cause of action itself "arises out" of ,defendant's activities in the forum or if defendant has "sufficient contacts" with the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* — U.S. ——, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). However, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d

1283, 1298 (1958). This court has noted that the "threshold due process requirement for assertion of jurisdiction is contacts, ties or relation with the forum state," and considerations such as minimal defendant inconvenience, strong forum state interest in applying its law, and convenience of location of the forum state are secondary. *Northern Propane Gas Co., supra* 127 Ariz. at 527, 622 P.2d at 474, (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). *See also Insurance Corp. of Ireland v. Compagnie des Bauxites,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

The personal jurisdiction requirement applies in domestic relations cases as strongly as it does in other actions. In *Kulko, supra,* a wife, after legally separating from her husband in their New York domicile and obtaining a Haitian divorce, moved to California, her minor children joining her there later. The U.S. Supreme Court held that, despite marriage in California during a three-day military stopover by her husband, and despite her and the children's present California residence and the consequent connection of her claim for modification of child support with that state, California's long-arm statute could not reach the husband domiciled in New York, since he himself lacked minimum contacts with California. (Her remedy lay in the use of URESA.)

While the determination of sufficient contacts must necessarily be done on a case-by-case basis, other courts' decisions can be instructive. In *Hodge v. Maith,* 435 So.2d 387 (Fla.App.1983), URESA was utilized to enforce a Pennsylvania default judgment of paternity and support against the putative father domiciled in Florida. The court held that where the children had not been born in Pennsylvania and there was no allegation that the putative father was ever in that state or derived any personal or commercial benefit from his alleged children's presence there, he lacked

**70**

sufficient contact with Pennsylvania to entitle that state's judgment to full faith and credit in Florida. The court noted that a paternity action could be instituted in Florida under URESA in accordance with Florida's paternity statute. In *Eby v. Leenerts,* 623 S.W.2d 502 (Tex.App.1981), a parent-child status suit, a Texas court held that where there was no record of pleading or proof that the husband, who had been served with process in Arizona, had "minimum contacts" with Texas, the court would not exercise jurisdiction over him. *See also, Lightell v. Lightell,* 394 So.2d 41 (Ala. Civ.App.1981) (alleged failure to support child could not amount to minimum contacts for valid paternity action); *Barnhart v. Madvig,* 526 S.W.2d 106 (Tenn.1975) (unilateral action of pregnant appellant mother coming to Tennessee, establishing residency, and giving birth did not afford personal jurisdiction over putative father who had never been in Tennessee). In a relevant non-paternity case, *Southern v. Southern,* 43 N.C.App. 159, 258 S.E.2d 422 (1979), a suit for alimony and child support, the court held that when the only contact with England was the marriage itself, the English court lacked jurisdiction over the American husband and its judgment need not be enforced in North Carolina under principles of comity. *See also, Lansford v. Lansford,* 96 A.D.2d 832, 465 N.Y.S.2d 583 (1983), (South Carolina court had no personal jurisdiction in a divorce petition over a wife who had no contacts with that state other than signing a joint South Carolina tax return as a "mere formality" and making some short visits there). In the Arizona divorce case of *Nickerson v. Nickerson,* 25 Ariz.App. 251, 542 P.2d 1131 (1975), our Court of Appeals correctly held that where the parties left Arizona and established their matrimonial domicile elsewhere, the return of the wife to Arizona did not provide a sufficient connection between Arizona and the absent husband to authorize personal jurisdiction over him. *Cf., e.g., Bebeau, supra,* (Wisconsin court's explicit findings that act of sexual intercourse, child's conception, and birth were all in Wisconsin gave it *in personam* long-arm jurisdiction entitled to full faith and credit in Arizona); *Backora v. Balkin,* 14 Ariz. App. 569, 485 P.2d 292 (1971) (in action to establish identity and fix birthright and parentage, where plaintiff alleged that all events which gave rise to infant's existence took place in state, and this was not denied by defendant, latter was amenable to service of process outside of state); *Neill v. Ridner,* 153 Ind.App. 149, 286 N.E.2d 427 (1972) (alleged act in Indiana giving rise to bastardy action met "minimum contact" requirement and subjected nonresident putative father to Indiana jurisdiction); *Larsen v. Scholl,* 296 N.W.2d 785 (Iowa 1980) (same).

Clearly petitioner was not in New Mexico at the time the action itself was brought since the record shows that he was served in Arizona and there was no New Mexico finding that he resided in New Mexico. Since there also was no finding by the New Mexico court that petitioner had any previous connection with New Mexico except for the performance of the marriage ceremony there, the New Mexico court has provided no basis upon which our trial court could find petitioner had the prerequisite minimum contacts with New Mexico such that he could validly be forced to contest a paternity action there.[1] No other evidence of petitioner's contacts with New Mexico was pleaded or presented to our trial court which that court might have used to find minimum contacts had existed.[2] We do not think the mere occurrence of petitioner's

---

**1.** We note that had petitioner not chosen to accept Commissioner Carson's order of support for Kathlyn, he could have maintained the same argument as to her support.

**2.** The letter purportedly written by petitioner implying his paternity contains no statement

linking him to New Mexico. Joycelene's affidavit to this court concerning such contacts is not sufficient. The allegations in her affidavit need to be presented in the trial court so that petitioner is afforded the opportunity to respond to them.

marriage in New Mexico without residence or domicile there creates the kind of forseeability of a paternity action "such that he should reasonably anticipate being haled into court there." *Northern Propane Gas Co., supra* 127 Ariz. at 526, 622 P.2d at 473 (quoting *World-Wide Volkswagen Corp., supra,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501); *see Kulko, supra,* 436 U.S. at 93, 98 S.Ct. at 1697, 56 L.Ed.2d at 142 (basing California jurisdiction over husband in child support action on three-day (marriage) and one-day stopovers in that state "would make a mockery of" due process limitations on assertion of personal jurisdiction).

■■■■ As it is, the New Mexico judgment, "being a duly authenticated judgment of a court of general jurisdiction of a sister state, is *prima facie* evidence of that court's jurisdiction to render it and of the right which it purports to adjudicate." *Lofts, supra,* 140 Ariz. at 411, 682 P.2d at 416.[3] Therefore, petitioner had the burden of presenting sufficient evidence to overcome this presumption of jurisdiction. Our review of the present record indicates that petitioner has presented sufficient uncontroverted facts in his pleadings that, because of the absence of any opposing facts in our trial court other than the New Mexico court's finding that petitioner was married in New Mexico and its otherwise unsupported finding of jurisdiction, we could readily find that minimum contacts between petitioner and New Mexico did not exist. Thus we find that the respondent judge abused his discretion in giving full faith and credit to the New Mexico decree of dissolution. *See Williams v. North Carolina* (Williams II), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945) (since the power to grant divorce is based on domicile, North Carolina did not have to be bound by an *ex parte* Nevada divorce decree which contained merely "an unfounded, even if not collusive, recital" of jurisdiction through domicile which had not been "squarely litigated").

■■■■ Because petitioner raised a substantial question of fact in his pleadings as to the validity of New Mexico's jurisdiction, a hearing was necessary at which he could attack the New Mexico decree. *See Smart v. Cantor, supra,* (at hearing on former husband's habeas corpus petition seeking to enforce Utah custody order, wife should have been allowed to be heard on issue of whether Utah had had jurisdiction to award husband custody of child). Petitioner had requested such a hearing but he was not afforded one. We therefore vacate the trial court ruling and remand for a hearing. If, at the hearing, New Mexico is found to have lacked jurisdiction, an adjudication on the merits will be in order pursuant to URESA. (A.R.S. § 12–1676). *See Glover v. Clark,* 161 Ga.App. 552, 554, 288 S.E.2d 887, 889 (1982) (in URESA action, former husband was entitled to trial by jury on paternity issue in Georgia as District of Columbia court in prior divorce proceeding had not had personal jurisdiction over him to adjudicate issue because, although he had subsequently married wife, the record "did not demand a finding that respondent father recognized the child as his.").

We need not concern ourselves at this time with the question of whether, if minimum contacts are proven to have existed, New Mexico's long-arm statute would have validly applied to secure jurisdiction over petitioner by the New Mexico court. *See generally,* Annot.: *Long-Arm Statutes:*

---

**3.** "If it appears on its face to be a record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself." *Adam v. Saenger,* 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649, 651 (1938). "If the record is silent with respect to any fact which must have been established before the court could have rightly acted, it will be presumed that such fact was properly brought to its knowledge." *Settlemier v. Sullivan,* 97 U.S. 444, 449, 24 L.Ed. 1110, 1111 (1878), *quoted in Austin v. Smith,* 312 F.2d 337, 342 (D.C.Cir.1962); *see also, Leininger v. Leininger,* 705 F.2d 727 (5th Cir.1983).

**72**

*Obtaining Jurisdiction Over Non-Resident Parent in Filiation or Support Proceedings,* 76 A.L.R.3d 708 (1977).

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.