# Supreme Court of the Navajo Nation

---

**Sunny Jean Yazzie,** *Appellant,*

*vs.*

**Larry Kee Yazzie,** *Appellee*

Decided December 23, 1985

---

## OPINION

*Before Tso, Acting Chief Justice, Bradley and Neswood, Associate Justices.*

*Opinion delivered by Tso, Acting Chief Justice.*

This matter comes before the Supreme Court on two issues:

1. Whether the trial court had jurisdiction of the subject matter and jurisdiction over the Respondent;

2. If the trial court had jurisdiction, did it abuse its discretion in its Orders regarding divorce, division of property, and custody and support of the minor children.

There have been many motions filed by both parties at all stages of this proceeding. The Court will set forth only what it considers necessary for an understanding of this case.

Appellant and appellee were married in 1975 in Des Moines, Iowa. Later that year a Navajo wedding ceremony was performed. Appellant is an enrolled member of the Comanche Tribe. Appellee is an enrolled member of the Navajo Tribe. Four children were born of this marriage. The four children are enrolled members of the Comanche Tribe.

On June 6, 1984, appellee filed a petition for Dissolution of Marriage in the Tuba City District Court. On June 22, 1984, the Tuba City District Court granted a Motion for Appointment of Process Server to serve appellant in Lawton, Oklahoma. Appellant received a copy of the Petition for

Dissolution of Marriage through the process server and also by certified mail delivered June 12, 1984.

On or about July 7, 1984, appellant filed in the Distict Court a Special Appearance Contesting Jurisdiction. In that pleading appellant stated that she did not reside on the Navajo Reservation and that prior to moving to Oklahoma, appellant and the minor children were residents of Heber City, Utah, where they had moved on January 1, 1984. Appellant made no further appearances in the trial court.

At this stage of the proceedings both parties were representing themselves. Appellant continued to represent herself throughout this case. Appellee was represented by counsel for a short period of time after the appeal was filed but for the majority of the case appellee also appeared *pro se*.

On July 24, 1984, the trial court entered a judgment granting appellee a divorce by default. The trial court found that appellee had resided on the Navajo Reservation for at least 90 days prior to the commencing of the action. The divorce judgment awarded the appellee custody of the minor children, awarded appellant alimony, and divided up the personal property. Appellee was also awarded a house in Gallup, New Mexico.

Thereafter appellant filed an appeal. On November 19, 1984, the Court allowed the appeal on the two issues set forth at the beginning of this Opinion. The Court also stayed any execution of the divorce judgment and referred the case back to the trial court for findings of fact and conclusions of law on the issue of jurisdiction.

On February 19, 1985, the Tuba City District Court had an in camera hearing and on March 27, 1985, the trial court issued Findings of Fact, Conclusions of Law, and Modified Judgment.

According to an affidavit of appellee dated February 8, 1985, he and appellant resided on the Navajo Reservation in Window Rock from June, 1983, until April, 1984. Appellee's affidavit indicates at that time appellant moved to Gallup and appellee moved to Tuba City. Other pleadings filed by appellee indicate that appellant thereafter removed herself and the minor children to Lawton, Oklahoma. The Special Appearance Contesting Jurisdiction filed in the trial court by appellant in July, 1984, states that she and the children moved to Heber, Utah, on January 1, 1984, and then to Lawton, Oklahoma.

Regardless of the date appellant left the reservation, it is clear that both parties agree that appellant and the minor children were not residing on the reservation at the time the divorce was filed on June 6, 1984, and that they had not been residents of the reservation for some time prior to the filing of the petition for Dissolution of Marriage on June 6, 1984.

7 N.T.C §253 sets forth the jurisdiction of the Navajo Tribal Courts. At the time the divorce was filed §253 (2), which dealt with jurisdiction in

civil causes of action, stated that the Navajo Tribal Courts shall have original jurisdiction over "All civil actions in which the defendant is an Indian and is found within its territorial jurisdiction. All civil actions in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur in Navajo Indian Country." This is a 1980 amendment to the jurisdiction statute which deleted a separate subsection on domestic relations which had provided for trial court jurisdiction of all cases involving the domestic relations of Indians.

Under the statute as amended the Navajo Tribal Courts had subject matter jurisdiction of all civil matters within the territorial jurisdiction of the Navajo Nation.

This subject matter jurisdiction of all civil actions was contingent upon personal jurisdiction of the defendants. This would appear to foreclose jurisdiction in the instant case as appellant did not fall within any of the requirements of 7 N.T.C. §253 (2).

Divorce, however, presents a situation that is somewhat dissimilar to other civil causes of action. Matters of family relationships, including marriage and divorce are areas of concern to a sovereign government. It is universally recognized that sovereign nations have the right and authority to regulate marriage and divorce among those who reside within the territorial boundaries of the sovereign.

In the United States, the federal government has recognized the rights and interests of the states in regulating marriage and divorce within state borders. These rights and interests are limited among the states by the requirements of due process and the full faith and credit clause. In order to balance the rights of the state in granting a divorce to one of its citizens with the due process rights of an out-of-state spouse, the federal and state governments have developed the theory of marriage as a status and that that status accompanies each party to the marriage.

Separation of the marital parties often results in one moving to another state. Due process questions are inherent in the attempt of either state to determine the marital status and dispose of all the incidents thereto when there is no personal jurisdiction over the out-of-state defendant. Lack of jurisdiction leaves the decree subject to being declared invalid or void. The state courts, with the blessing of the U.S. Supreme Court, follow the principle that the status of marriage which has been brought within a state's borders by one of the spouses may be terminated by the courts of that state, even though there is no jurisdiction to determine the incidents of marriage such as care and custody of the children, division of property, spousal support, etc. In these situations, domicile of the plaintiff or petitioner within the territorial boundaries is necessary to give the court jurisdiction of the status when there is no personal jurisdiction over the defendant/ respondent.

In 1942, in *Williams v. North Carolina,* 317 U.S. 287, 87 L. Ed. 279, 63 S. Ct. 207 (1942), the U.S. Supreme Court upheld the power of state courts to determine marital status (grant a divorce) when one of the spouses is not domiciled within the state.

The existence of the power of a state to alter the marital status of its domiciliaries as distinguished from the wisdom of its exercise, is not dependent on the underlying causes of the domestic rift. As we have said, it is dependent on the relationship which domicile creates and the pervasive control which a state has over marriage and divorce within its own borders. 87 L. Ed. at 287.

Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few commanding problems in the field of domestic relations with which the state must deal. Thus it is plain that each state by virtue of its command over its domiciliaries and its large interest in the institutions of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent. There is no constitutional barrier if the form and nature of substituted service. . . meet the requirements of due process. 87 L. Ed. at 286.

Thus it is recognized that the power to regulate marriage and divorce within its borders provides a sovereign with the power to determine the marital status of one spouse even though the other spouse is without the territorial borders.

The Court must therefore look to the Navajo Tribal Code to determine the power of the Navajo Tribal Courts to grant divorces when one spouse is not domiciled in the Navajo Nation.

Prior to its amendment in 1980 the general jurisdiction statute contained the following statement of Tribal Court jurisdiction:

(2) *Civil Causes of Action.* All civil actions in which the defendant is an Indian and is found within its territorial jurisdiction.
(3) *Domestic Relations.* All cases involving the domestic relations of Indians, such as divorce or adoption matters. Residence requirements in such cases shall remain as heretofore provided in regard to the Navajo Tribal Courts of Indian Offenses.

Section 253 of Title 7 was amended February 13, 1980, by Tribal Council Resolution CF-19-90. The two above subsections were combined into one which read:

(2) *Civil Causes of Action.* All civil actions in which the defendant is an Indian and is found within its territorial jurisdiction. All civil actions in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur in Navajo Indian Country.

On December 4, 1985, this section was further amended to delete the first sentence. The civil jurisdiction grant now reads "All civil actions in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur within the territorial jurisdiction of the Navajo Nation."

The Tribal Council Resolution CF-19-80 which amended the civil jurisdiction in 1980 is clear that the purpose of the amendment was to extend the civil jurisdiction to include non-Indians within the Navajo Nation. In intent or in actuality, there was no limitation upon the current jurisdiction of the Tribal Courts. In No. 2 of the Whereas Clauses of Tribal Council Resolution CF-19-80, the Navajo Tribal Council specifically recognized the jurisdiction of the Navajo Tribal Courts over domestic matters. Clearly the intent is to give the Tribal Courts authority to hear *all* civil matters that either arise within the territorial boundaries of the Navajo Nation or involve residents of the Navajo Nation.

Title 9 of the Navajo Tribal Code provides the Navajo Tribal regulation regarding Domestic Relations. 9 N.T.C. §401 states "The Courts of the Navajo Tribe are authorized to dissolve all marriages,. . ." §402 of Title 9 requires that the complaining party to a dissolution of marriage must have resided within the territorial jurisdiction of the Navajo Nation for 90 days prior to filing a complaint for dissolution of marriage.

§204 of Title 7 as amended on December 4, 1985, states that the Navajo Tribal Courts may use the laws of the state in which the dispute lies for "Any matters not covered by the traditional customs and usages or laws or regulations of the Navajo Nation or by applicable Federal laws and regulations. . . ." Prior to the amendment it was mandatory in these situations that the Tribal Courts apply the laws of the state in which the matter in dispute lies.

Arizona recognizes that the dissolution of a marriage is an action *in rem* over the marriage status and that personal jurisdiction over both spouses is not required. *Schilz v. Superior Court of the State of Arizona, In and for the Country of Maricopa*, 695 P. 2d 1103, 144 Ariz. 65 (1985); Arizona Statutes 25-311 and 25-312.

7 N.T.C §701 (a) provides that a judgment may consist of a "declaration of rights of the moving party."

Under the foregoing the Court holds that dissolution of marriage is an action affecting the status of marriage and that the Navajo Tribal Courts have jurisdiction to grant a dissolution of marriage when one of the spouses is domiciled within the territorial jurisdiction of the Navajo Nation if the complaining party has met the residency requirements even though the other spouse is domiciled outside the Navajo Nation.

This Court follows the principle that once the appellate court has assumed jurisdiction, the trial court may take no further action except at the direction of the appellate court. The trial court had no authority to

make any further orders in this matter after the appeal was filed.

The trial court had no jurisdiction to determine any matters in this case other than granting the dissolution and making a disposition of the property found within its territorial jurisdiction.

Therefore it is Ordered that that portion of the decree entered on July 24, 1984, which grants the divorce is affirmed. That portion of the decree which awards the appellee the household furniture in his possession and the 1977 Chevrolet pickup and camper is affirmed. All other Orders of the trial court are vacated and set aside.