CLIFFORD SCOTT GOODWIN,           )
                                  )
        Petitioner/Appellant,     )
                                  )        Cheatham Chancery
                                  )        No.  8196
VS.                               )
                                  )        Appeal No.
                                  )        01-A-01-9512-CH-00547
JUDITH ANNETTE WETZ f/k/a         )
JUDITH ANNETTE GOODWIN,           )
                                  )
        Respondent/Appellee.      )

**FILED**

**May 3, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT OF CHEATHAM COUNTY

AT ASHLAND CITY, TENNESSEE


HONORABLE LEONARD W. MARTIN, JUDGE



MIKE W. BINKLEY
150 Second Avenue, North
Suite 300
Nashville, Tennessee 37201
ATTORNEY FOR PETITIONER/APPELLANT



JUDITH A. WETZ (LANGLEY)
P.O. Box 584
105A Smith Street
Dannemora, New York   12929
RESPONDENT/APPELLEE/PRO SE



AFFIRMED AND REMANDED


                              HENRY F. TODD
                              PRESIDING JUDGE, MIDDLE SECTION



CONCUR:
BEN H. CANTRELL, JUDGE
WILLIAM C. KOCH, JR., JUDGE

CLIFFORD SCOTT GOODWIN,            )
                                   )
        Petitioner/Appellant,      )
                                   )    Cheatham Chancery
                                   )    No. 8196
VS.                                )
                                   )    Appeal No.
                                   )    01-A-01-9512-CH-00547
JUDITH ANNETTE WETZ f/k/a          )
JUDITH ANNETTE GOODWIN,            )
                                   )
        Respondent/Appellee.       )

O P I N I O N

The captioned petitioner has appealed from the dismissal of his suit to enroll and
modify a foreign divorce decree.

On April 4, 1995, plaintiff filed his "Petition to Enroll Foreign Decree of Divorce and
Marital Dissolution Agreement and Request to Establish Payment of Child Support by the
Respondent."

The petition alleges the following facts:

Petitioner is a resident of Cheatham County, Tennessee, and respondent is a resident
of Dannemora, New York.  On May 11, 1989, the Circuit Court of Lake County, Florida
entered a divorce decree granting custody of two children to petitioner, but ordering no child
support.  No child support has been subsequently ordered.  Respondent is able to and should
pay child support.

The petition prays:

> . . . (2) That after proper notice and hearing that this Court
> accept and give Full Faith and Credit to the Florida Final
> Judgment of Dissolution of Marriage and all subsequent
> pleadings.
>   (3) That at the hearing of this cause an amount of child
> support be established for the support and maintenance of the
> parties' two minor children.
>   (4) That at the hearing of this cause the Respondent be
> required to purchase and maintain and keep in full force and

effect a major medical and hospitalization insurance policy for the benefit of the parties' two minor children.

(5) That at the hearing of this cause, the Respondent be required to purchase and maintain a life insurance policy on her life covering her financial obligations to be established in this matter.

(6) That at the final hearing of this cause, Respondent be required to provide and pay for the transportation of the minor children to and from visitation.

(7) That the Respondent be required to pay the Petitioner attorney fees, for which execution may issue if necessary.

The following documents from the Florida Court are exhibited to the petition: "Final Judgment of Dissolution of Marriage" entered May 16, 1989; "Petition for Modification of Final Judgment" filed by the wife on February 24, 1992, seeking custody of children; Summons issued for husband in Springfield, MO; Answer of husband to petition; Stipulation to Modification of Final Judgment executed by the parties on April 30, 1992, containing the following:

3. The Former Wife shall be responsible to provide transportation for the minor children from the Former Husband's home to her home and the Former Husband shall be responsible to provide transportation for the return trip to his home.

4. The Former Wife remains unable to pay child support for the benefit of the minor children, and, accordingly, she shall continue to not be responsible for payment of child support to the Former Husband.

5. In all other respects, the parties shall be bound by the terms set forth in the Final Judgment of Dissolution of Marriage, entered on May 11, 1989.

Order entered by Florida Court in conformity with the stipulation.

The record does not contain a summons or return thereon, but it must be assumed that the respondent was served under the "Tennessee Long Arm Statute," for, on May 18, 1995, respondent made limited appearance for the purpose of contesting in personam jurisdiction of respondent and filed an unsworn motion to dismiss on this ground.

No evidence was presented to the Trial Court except the sworn petition and the Florida divorce decree duly certified in accordance with the Act of Congress relating thereto.

There is a brief transcript which contains no testimony, but only a colloquy between counsel and the Trial Judge. Counsel stated that they agreed upon the facts, so their statements may be considered to be stipulations in lieu of evidence.

During said discussion between counsel and the Trial Judge, the following occurred:

The Court: When did they leave Tennessee and go on to Florida?

. . . .

Ms. Bennett: . . . I have down here that September of 1988 is when they left Smyrna, Tennessee and moved to Florida.

. . . .

The Court: All right. Now, then. We know that in early '89 they got their divorce down in Florida. Where did they live in 1992 at the time that the matter was back before the Florida Court?

Ms. Bennett: She was still in Florida. He was, I believe, here in Tennessee, but Mr. Binkley could probably address that better.

Mr. Binkley: Yes, sir, he was. He was working for the Cracker Barrel Corporation.

The Court: After the divorce in May of 1989, when did one of them leave the State of Florida and which one was it?

Ms. Bennett: The husband left the State of Florida and --

The Court: When?

. . . .

Mr. Binkley: At the end of May, right after the divorce apparently.

. . . .

The Court: With his children, and the wife stayed in Florida?

Mr. Bennett: Yes, sir.

. . . .

The Court: Now, then.  Let's go back to May of '89 after the divorce.  The wife's in Florida.  He leaves and comes back to Tennessee.  What was her travel scenario?  How long did she stay in Florida?

Ms. Bennett: She stayed in Florida from September of 1988 when she moved there until August of 1994.  Then in August of 1994, she moved to New York State.

The oral ruling of the Trial Court was:

But I think that is going to have to be done in New York or down in Florida, one or the other.  And I have concluded that the fact that the father lives here with the children under these laws, as I read them, does not say that we can bring her -- who at least is potentially subject to it -- and make her come here into this Court to have that question litigated.  So I think you've either got to go back to the court that's had the case all along, or you've got to go where she is, one or the other.  And I've concluded that to be the law, and so that's the way I rule.

The judgment of the Trial Court reads as follows:

This cause came on to be heard on this the 14th day of July, 1995, before the Honorable Leonard Martin, Judge of the Chancery Court for Cheatham County, Tennessee, upon the Plaintiff's "Petition to Enroll Foreign Decree of Divorce and Marital Dissolution Agreement and Request to Establish Payment of Child Support by the Respondent," the limited appearance filed by the Defendant and the Motion to Dismiss filed by the Defendant, stipulation of the facts, briefs and statements of counsel, from all of which the Court finds that the Court lacks personal jurisdiction over the Defendant as the Defendant does not have sufficient minimum contacts with the State of Tennessee to allow the modification of the Florida Decree of Divorce.

It is therefore ordered adjudged and decreed that the Petition to Enroll Foreign Decree is denied.  The petition is dismissed.  Costs of this cause are taxed to the Plaintiff.

Entered this 31st day of July, 1995.

/s/ Leonard Martin, Judge

On appeal, appellant presents for review the following issue:

Whether the Tennessee Courts have *in personam* jurisdiction over a non-resident spouse to establish child support obligations where the parties were married in Tennessee, lived in Tennessee and raised the two minor children in Tennessee

for half of the marriage, relocated to another state where divorce ensued almost immediately, and where the custodial spouse returned to Tennessee with the two minor children immediately after the divorce without any objection of the non-resident spouse who now lives in a third state.

Appellant's argument restates the issue as follows:

The question posed in the instant case is quite simple: whether the Mother's contacts with the State of Tennessee are sufficient such that the maintenance of a lawsuit here to determine whether she has the ability to pay child support offends notions of fair play and substantial justice. Phrased differently, the question is whether the Mother's due process rights are violated by requiring her to defend against the child support action in Tennessee, rather than in New York or Florida, even though she lived here during her marriage and chose this State as the home for her children.

Title 20, Part 2 of TCA contains the "Long Arm Statutes of Tennessee." TCA §20-2-214 reads as follows:

**Jurisdiction of persons unavailable to personal service in state - Classes of actions to which applicable. -** (a) Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:
(1) The transaction of any business within the state;
(2) Any tortious act or omission within this state;
(3) The ownership or possession of any interest in property located within this state;
(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;
(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;
(6) Any basis not inconsistent with the constitution of this state or of the United States;
(7) Any action of divorce, annulment or separate maintenance where the parties lived in the marital relationship within this state, notwithstanding one party's subsequent departure from this state, as to all obligations arising for alimony, custody, child support, or marital dissolution agreement, if the other party to the marital relationship continues to reside in this state.
(b) "Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.
(c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative. . . .

Subsection (7) authorizes any "action" "as to child support" "where the parties lived in marital relationship within this state" "if the other party to the marital relationship continues to reside in this state."

Neither subsection (6) nor subsection (7) is interpreted to grant long arm jurisdiction to modify a Florida decree in respect to child support under the circumstances of this case.

In an unpublished opinion in the case of *Miller v. Miller,* Middle Section August 5, 1987, this Court affirmed the dismissal of a similar suit to modify a Florida divorce. In that case, the parties were married in Georgia and moved to Florida where three children were born and where a divorce decree awarded "shared custody" and ordered the father to pay support. The mother moved to Tennessee with the children. The Florida Court granted visitation with the children. The Florida Court resolved various other disputes regarding the children. While a further petition was pending before the Florida Court, the mother filed a suit in Tennessee to enforce support for herself and children and served long arm process on the father.

On appeal, the mother relied upon §20-2-214(a)(6), quoted above. This Court held:

> . . . This section expands the jurisdiction of Tennessee's courts to the full limit allowed by the due process requirements of Article I, Section 8 of the Constitution of Tennessee and the Fourteenth Amendment to the United States Constitution. Shelby Mutual Insurance Co. v. Moore, 645 S.W.2d 242, 244-45 (Tenn.Ct.App. 1981). It permits the courts of this state to assume personal jurisdiction over a nonresident defendant if the defendant has minimum contacts with Tennessee such that the maintenance of a suit here does not offend notions of fair play and substantial justice. Masada Investment Corp. v. Allen, 697 S.W.2d 332, 334 (Tenn. 1985).
>
> The adequacy of a nonresident's contacts with the forum must be assessed on a case by case basis to determine whether the requisite affiliating circumstances are present. Kulko v. Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697 (1978) and Smith v. Smith, 254 Ga. 450, 330 S.E.2d 706, 709 (1985). This analysis should not be mechanical and should focus primarily on the defendant, the forum, and the nature of the litigation. Helicopteros Nationales de Columbia, S.A. v. Hall,

466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984); <u>Calder v. Jones</u>, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486 (1984); and <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580 (1977).

It is the quality and nature of the defendant's contacts with the forum that are important, not the defendant's contacts with the plaintiff or the plaintiff's contacts with the forum. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 319, 66 S.Ct. 154, 160 (1945); <u>Smith v. Smith</u>, 254 Ga. 450, 330 S.E.2d 706, 709 (1985) and <u>Basler v. Nelson</u>, 633 S.W.2d 491, 493 (Tenn.Ct.App. 1982). Considerations such as (a) the burden on the nonresident defendant, (b) the interest of the forum state in applying its own law, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the various states' shared interest in furthering substantive social policies are secondary. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292-94, 100 S.Ct. 559, 564-65 (1980) and <u>Schilz v. Superior Court</u>, 144 Ariz. 65 695 P.2d 1103, 1107 (1985).

While the plaintiff's residence in the forum state may enhance the defendant's own contacts, <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 780, 104 S.Ct. 1473, 1481 (1984), the plaintiff's actions alone will never be sufficient to establish minimum contacts between the defendant and the forum state. Thus, a plaintiff cannot, by some unilateral action, confer jurisdiction over a nonresident defendant when minimum contacts between the defendant and the forum are absent. <u>Kulko v. Superior Court</u>, 436 U.S. 84, 93-94, 98 S.Ct. 1690, 1697-1698 (1978); <u>Hansen v. Denckla</u>, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40 (1958); <u>Schilz v. Superior Court</u>, 144 Ariz. 65, 695 P.2d 1103, 1107 (1985); <u>Goldenhersh v. Febrey</u>, 711 P.2d 717, 719 (Colo.App. 1985); and <u>Barnhart v. Madvig</u>, 526 S.W.2d 106, 108-09 (Tenn. 1975).

A single act by a nonresident defendant may be sufficient to create a substantial connection between the defendant and the forum state. <u>McGee v. International Life Insurance Co.</u>, 355 U.S. 220, 223, 78 S.Ct. 199, 201 (1957). However, a single or occasional act will not suffice as a minimum contact if the nature of the act and the circumstances surrounding its commission create only an attenuated affiliation with the forum state. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 n.18, 105 S.Ct. 2174, 2184 n.18 (1985).

Mrs. Miller has the burden of establishing that it would be fair and equitable for a court in this State to assert personal jurisdiction over Mr. Miller. <u>Carlson v. Carlson</u>, 101 Ill.Dec. 384, 147 Ill.App.3d 610, 498 N.E.2d 708, 710 (1986), <u>app. denied</u>, 113 Ill.2d 572, 505 N.E.2d 351 (1987). She insists that Mr. Miller has sufficient contacts with Tennessee because he has entered Tennessee to exercise his visitation privileges and because, on one occasion, he was accompanied by several local law enforcement officers when he did so.

The record indicates that Mr. Miller has entered Tennessee on two occasions. The first was in June, 1985 when Mr. Miller came to Tennessee to pick up the children for the purpose of exercising the extended visitation awarded by the Florida court. Mr. Miller was accompanied on this occasion by several Nashville police officers apparently to make sure that Mrs. Miller complied with the Florida court's visitation order. The second occasion was in August, 1985 when he returned the children to Mrs. Miller.

The presence of Mrs. Miller and her children in Tennessee is the result of a unilateral act by Mrs. Miller. Mr. Miller took no part in this decision and, in fact, opposed it by seeking to have Mrs. Miller held in contempt for doing so. There is no evidence in the record that Mr. Miller derives any personal or economic benefit from his children and former wife living in Tennessee.

. . . .

The secondary considerations involving the convenience of the parties, the location of the children and potential witnesses, and the interests of Tennessee as the children's home state do not outweigh the lack of contacts between Mr. Miller and Tennessee. Likewise, they do not outweigh Florida's interest in maintaining the integrity of one of its court's decrees involving a marital relationship that existed in Florida and children who were born there. The significance of these considerations is also diluted by the fact that the Uniform Reciprocal Enforcement of Support Act, Tenn. Code Ann. §36-5-201 et seq., and the Uniform Child Custody Jurisdiction Act, Tenn. Code Ann. §36-6-201 et seq., provide Mrs. Miller with mechanisms to obtain convenient and effective relief in the Florida courts with regard to child support and custody matters.

In the present case, the parties married in Tennessee in 1983, left Tennessee for three years, returned for 2 ½ years, moved to Florida in 1988, and were divorced in Florida in 1989. One of the children was born in Tennessee. So far as this record shows, the mother has not been in Tennessee since 1988. She was in Florida until 1994, when she moved to New York.

Appellant argues that neither party has any present relationship with Florida. The parties are subject to the continuing jurisdiction and orders of a Florida court in respect to matters arising out of their divorce.

Appellant argues that the actions of the parties in Tennessee prior to the divorce confer long arm jurisdiction upon Tennessee courts to modify the decree of the Florida court. This court does not agree. All jurisdictional authority vested in the Florida court when the parties, as residents of Florida submitted their divorce problems to that court.

TCA §26-6-104 provides as follows:

> **Effect and treatment of authenticated foreign judgment. -**
> (a) A copy of any foreign judgment authenticated in accordance with the acts of congress or the statutes of this state may be filed in the office of the clerk of any circuit or chancery court of this state.
>
> (b) The clerk shall treat the foreign judgment in the same manner as a judgment of a court of record of this state.
>
> (c) A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record of this state and may be enforced or satisfied in like manner.

Under this statute, either party has the right to enrollment of the Florida judgment in Tennessee for enforcement, but not for modification. Lack of minimum contacts is irrelevant in such a procedure. *Biogen Distr. Co. v. Tanner*, Tenn. App. 1992, 842 S.W.2d 253. The petition makes no request for enforcement of the Florida decree in Tennessee.

TCA Title 36, Chapter 5, Part 2 is the Uniform Reciprocal Enforcement of Support Act under which the petitioner in the present case may be able to establish and enforce a right of support against the non-resident mother.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

_____

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:


_____

BEN H. CANTRELL, JUDGE


_____

WILLIAM C. KOCH, JR., JUDGE