IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE DEPENDENCY AS TO H.H.

No. 1 CA-SA 25-0171

FILED 10-10-2025

Petition for Special Action from the Superior Court in Maricopa County
No. JD44780
The Honorable Gregory Como, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Petitioner*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Respondent Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Respondent H.H.*

**OPINION**

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Samuel A. Thumma and Judge Angela K. Paton joined.

**C A T T A N I**, Judge:

¶1        Sean L. ("Presumed Father") appeals from the superior court's ruling adjudicating child H.H. dependent as to him, asserting that the court erred by affirming paternity based on the marital presumption despite genetic testing ruling out biological paternity. *See* A.R.S. § 25-814(A)(1), (C). Given the short timeframe available to address the dependency adjudication before the next review hearing, we converted the appeal to a special action and accepted jurisdiction. *See In re Dep. as to G.K.*, 258 Ariz. 323, 325–26, ¶¶ 9–12 (App. 2024); A.R.S. § 8-847(A); Ariz. R.P. Juv. Ct. 341(a); Ariz. Ct. App., Div. 1, Admin. Ord. No. 2024-12 (Dec. 4, 2024) (providing mechanisms for expedited review of dependency findings); RPSA 12(b)(5)–(6). We then granted relief by order with a written opinion to follow. This is that opinion.

¶2        In *Albert L. v. Department of Child Safety*, this court held that "within a Title 8 dependency proceeding initiated by [the Department of Child Safety ("DCS")], A.R.S. § 25-814(C) does not authorize the superior court to disestablish an individual's long-standing presumptive paternity based solely on a negative paternity test and in the absence of another competing paternity claim." 253 Ariz. 146, 151, ¶ 21 (App. 2022). The superior court applied *Albert L.* here and concluded that the marital presumption was controlling absent a competing claim of paternity. We now clarify that *Albert L.* does not prevent the presumed parent (as opposed to DCS) from disputing and potentially rebutting the presumption of paternity. Accordingly, we vacate the dependency ruling to permit the superior court to consider under § 25-814(C) whether Presumed Father has rebutted the marital presumption of paternity.

¶3        The relevant facts are undisputed. Presumed Father and Amber H. ("Mother") married in 2005, but they physically separated in October 2013. H.H. was conceived almost a year later and was born in June 2015, while Mother and Presumed Father were legally married but estranged. H.H.'s Arizona birth certificate did not name a father.

¶4        In September 2015, Presumed Father filed for divorce in Georgia. Both his complaint and a concurrently submitted "settlement agreement" (signed by Presumed Father but not Mother) stated that there were "no minor children" of the marriage. Presumed Father affirmed that he was unable to determine Mother's whereabouts despite a diligent search and served her by publication. The Georgia court entered a default judgment of "total divorce" in March 2016, in an order that made no mention of children or paternity.

¶5        According to Presumed Father, he first learned of H.H.'s existence a few months after the divorce, but he remained certain that H.H. was not his child.  He had no contact with H.H. over the years and had no relationship with her.  Mother did not request financial support for H.H., and Presumed Father provided none.

¶6        Years later, in January 2025, DCS took custody of H.H., then nine years old.[1]  Although Mother reported that a different man (Sherman N.) was H.H.'s biological father, DCS confirmed that Mother and Presumed Father had been married when H.H. was conceived and filed an amended dependency petition alleging he was H.H.'s legal father.

¶7        Presumed Father contested the dependency and requested a DNA test, which showed a zero percent likelihood of biological paternity. He then moved to be dismissed as a party.  H.H. supported dismissal, noting that she had no pre-existing relationship with Presumed Father and (because he had been excluded as her biological father) was not interested in building a relationship with him.  DCS argued that paternity was established under the marital presumption and that, under *Albert L.*, the court lacked authority to disestablish his presumptive paternity.

¶8        The superior court denied dismissal and affirmed Presumed Father's paternity based on the marital presumption, reasoning that *Albert L.* prevented it from considering Presumed Father's attempt to rebut the presumption without a competing paternity claim.  After an evidentiary hearing, the court found H.H. dependent as to Presumed Father based on his unwillingness to exercise parental care and control given their lack of biological (or other) relationship.[2]  *See* A.R.S. § 8-201(15)(a)(i).  Presumed Father appealed.

¶9        Preliminarily, Presumed Father asserts that the Georgia divorce judgment "explicitly states there were no children of the marriage" and is entitled to full faith and credit, which he argues precludes application of the marital presumption here.  *See* U.S. Const. art. IV, § 1; *Schilz v. Superior Court*, 144 Ariz. 65, 68 (1985); *cf.* A.R.S. § 25-815.  But the Georgia court's two-page order says nothing about children or paternity.

---

[1]     The court has since found H.H. dependent as to Mother based on substance abuse, mental health, and financial issues that prevent her from meeting H.H.'s basic needs.  Mother is not a party to this appeal.

[2]     The court expressly did not find abuse or neglect, meaning Presumed Father would not be listed on the central registry.

Although the Georgia court likely would have resolved the paternity issue had it been raised, *see* Ga. Code Ann. §§ 19-5-15, -7-20(a)–(b); *Baker v. Baker*, 582 S.E.2d 102, 103 (Ga. 2003), the omission is unsurprising given Presumed Father's filings (including the default "settlement agreement" presented to the Arizona court along with the Georgia decree) asserted that there were no children of the marriage. As it stands, however, the Georgia decree itself includes no paternity or non-paternity judgment to which an Arizona court may afford full faith and credit.

**¶10** Presumed Father next argues that the superior court erred by applying the marital presumption without considering whether compelling evidence rebutted the presumption and disproved paternity.

**¶11** In the absence of a paternity judgment or its equivalent, *see, e.g.*, A.R.S. § 25-812(B)–(D), Arizona law creates a presumption of paternity under four enumerated circumstances, including if the presumed parent was married to the child's mother when the child was born, A.R.S. § 25-814(A)(1)–(4). The statute makes any such presumption rebuttable by clear and convincing evidence. A.R.S. § 25-814(C).

**¶12** The superior court here, applying the above-quoted language from *Albert L.*, *see supra* ¶ 2, concluded that it lacked authority to find that Presumed Father had rebutted the marital paternity presumption based on DNA testing absent a competing paternity claim. We conclude otherwise in light of a critical (albeit implicit) distinction between this case and *Albert L.*: the party seeking to rebut the presumption.

**¶13** In *Albert L.*, the presumed father took affirmative action (completing and filing a voluntary acknowledgment of paternity) to assert paternity and trigger the presumption. *Id.* at 147, ¶ 2. Presumed Father here took no steps to invoke the marital presumption, and in fact represented to the contrary that there were no children of the marriage when he filed for divorce. In *Albert L.*, the presumed father had a long-standing relationship with the child, having "cared for the child as his daughter" for seven years before DCS initiated the dependency. *Id.* at 147–48, ¶¶ 2–3. Presumed Father here had no contact with H.H. during the nine (plus) years before the dependency, much less any established parent–child relationship. What's more, neither Presumed Father nor H.H. herself expressed any desire to build that relationship in the absence of a genetic link.

**¶14** Of critical distinction for our purposes, in *Albert L.*, the presumed father opposed *DCS's attempt* to rebut the paternity presumption

4

based on genetic testing. *Id.* at 148, ¶¶ 4–6. That raised the specter that § 25-814(C) was being used as a shortcut to severance—a means to wholly circumvent the process required to terminate parental rights under § 8-533(B). Lack of a genetic link is not, after all, a ground for termination of parental rights. *See* A.R.S. § 8-533(B)(1)–(12). The *Albert L.* court observed as much, cautioning against allowing such a de facto "termination where a parent is the only father the child knows and has cared for a child for years, without any inquiry into parental fitness or the child's best interests," which it classed as an absurd result. 253 Ariz. at 151, ¶ 20 & n.3. Thus, the context in which *Albert L.* was decided—"within a Title 8 dependency proceeding initiated by DCS," *id.* at ¶ 21—is critical.

**¶15** A weighty concern militates against permitting DCS to rebut a presumption of paternity over a presumed father's objection, as occurred in *Albert L. See id.* at 148, ¶ 4. That concern is not present here, where a presumed father who has never had contact with the child seeks to rebut the presumption. Accordingly, we hold that in this posture, *Albert L.* does not prevent Presumed Father from attempting to rebut the marital paternity presumption.

**¶16** Because the paternity determination was a necessary prerequisite to the dependency finding, *see In re Dep. as to G.R.*, 255 Ariz. 444, 445, ¶ 1 (App. 2023), we vacate the dependency finding to permit the superior court to consider under § 25-814(C) whether Presumed Father has rebutted the marital presumption of § 25-814(A)(1). Given the short timeframe involved, this decision is effective immediately. *See* RPSA 18(c).



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR